UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES,                                   **FILED UNDER SEAL**
STATE OF FLORIDA,
MIAMI-DADE COUNTY,
STATE OF NEW YORK,
STATE OF CALIFORNIA,
STATE OF ILLINOIS,
STATE OF INDIANA,
CITY OF BALTIMORE,
COMMONWEALTH OF MASSACHUSETTS,
STATE OF NEW JERSEY,
STATE OF NEW MEXICO,
STATE OF NORTH CAROLINA,
STATE OF TENNESSEE,
        *ex rel.*

CHRISTOPHER HOOD,
        Plaintiffs,
v.

LEXISNEXIS RISK SOLUTIONS, INC.
        Defendant.
_____/

FILED by _____ D.C.

JAN 1 7 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – W.P.B.

## QUI TAM COMPLAINT

The Plaintiff, Christopher Hood, brings this action in the name of the United States, the

State of Florida, Miami-Dade County, the State of New York, as well as local governments

within New York identified below, the State of California, as well as local governments within

California identified below, the State of Illinois, the State of Indiana, the City of Baltimore, the

Commonwealth of Massachusetts, as well as local governments within Massachusetts identified

below, the State of New Jersey, the State of New Mexico, as well as local governments within

New Mexico identified below, the State of North Carolina, and the State of Tennessee, as well as local governments within Tennessee identified below, against Defendant LexisNexis Risk Solutions, Inc. ("Lexis).

## REMAINDER OF PAGE INTENTIIONALLY LEFT BLANK

## Table of Contents

OVERVIEW ........................................................................................................................... 5
   THE PARTIES ................................................................................................................... 8
JURISDICTION AND VENUE .......................................................................................... 10
FACTUAL ALLEGATIONS ............................................................................................. 10
   THE NATIONWIDE MARKET FOR AUTO CRASH REPORTS ................................. 10
   HOW LEXIS OBTAINS AUTO CRASH REPORTS ..................................................... 12
     Statewide Contracts ..................................................................................................... 12
     Contracts with Individual Police Agencies ................................................................ 13
     Courier ......................................................................................................................... 15
   HOW LEXIS OBTAINS CRASH REPORTS IN PARTICULAR STATES ................... 16
     Florida ......................................................................................................................... 16
     Miami-Dade County, Florida ...................................................................................... 20
     Georgia ........................................................................................................................ 23
     New York ..................................................................................................................... 25
     California ..................................................................................................................... 28
     Illinois ......................................................................................................................... 32
     Indiana ......................................................................................................................... 37
     Maryland (City of Baltimore) ..................................................................................... 38
     Massachusetts .............................................................................................................. 40
     New Jersey ................................................................................................................... 43
     New Mexico ................................................................................................................. 44
     North Carolina ............................................................................................................. 46
     Tennessee .................................................................................................................... 47
     Federal Police Agencies ............................................................................................. 53
   HOW LEXIS SELLS CRASH REPORTS & DEFRAUDS POLICE AGENCIES ......... 54
     Lexis Sells Crash Reports Through Numerous Internet Portals .................................. 54
     Lexis Maintains an Ever-Expanding "Inventory" of Crash Reports .......................... 56
     Lexis Does Not Pay Agency Fees on "Repeat" Sales Out of Inventory ..................... 57
   SPECIFIC REVERSE FALSE CLAIMS ....................................................................... 60
   FEDERAL GRANT FRAUD .......................................................................................... 63
     NHTSA Grant Funding ............................................................................................... 63
     Federal Grants Helped to Fund the Lexis Fraud ........................................................ 66
ATTORNEYS' FEES AND CONDITIONS PRECEDENT ................................................ 70
Count 1 – Federal FCA Claim .......................................................................................... 71
Count 2 – Florida FCA Claim ........................................................................................... 71
Count 3 – Miami-Dade FCA Claim .................................................................................. 72
Count 4 – Intentionally left blank ..................................................................................... 72
Count 5 – New York FCA Claim ...................................................................................... 73

Count 6 – California FCA Claim ......................................................................................................73

Count 7 – Illinois FCA Claim .........................................................................................................74

Count 8 – Indiana FCA Claim .........................................................................................................74

Count 9 – Maryland FCA Claim ......................................................................................................75

Count 10 – Massachusetts FCA Claim ............................................................................................75

Count 11 – New Jersey FCA Claim .................................................................................................76

Count 12 – New Mexico FCA Claim ..............................................................................................76

Count 13 – North Carolina FCA Claim ..........................................................................................77

Count 14 – Tennessee FCA Claim ..................................................................................................77

PRAYER FOR RELIEF ...................................................................................................................78

DEMAND FOR JURY TRIAL ........................................................................................................79

## OVERVIEW

1.     This is an action to recover damages against the Defendant for a widespread scheme to commit "reverse false claims" violations against federal, state, and local entities by Lexis.   In a related scheme, Lexis has caused fraud upon federal grant funds administered through the National Highway Traffic Safety Administration ("NHTSA").

2.     As further set forth below, Lexis is a global data company that collects and sells, among other things, auto crash reports prepared by state, local and federal police agencies.  Lexis obtains these crash reports by way of thousands of contracts with governmental entities.  Under these contracts, Lexis is supposed to collect an "agency fee" from each customer who orders a report and forward that fee to the police agency that produced the report.  Lexis is also permitted to charge a "convenience fee" or "handling fee" to the customer to compensate Lexis for the service of providing the report.

3.     As an essential part of these arrangements, Lexis must report to the appropriate police agency the true and correct number of auto crash reports sold to the public.  Likewise, Lexis must forward to the appropriate governmental agency the true and correct amount of fees due for each and every sale.  As set forth below, Lexis has engaged in a systematic pattern of under-reporting the number of crash reports sold and, in turn, under-paying its financial obligations to these agencies.  As a result, Lexis has knowingly made, used, or caused to be made or used, false records and statements material to its obligations to pay money to these police agencies, and Lexis has knowingly concealed, decreased, and avoided its financial obligations to these agencies.

4.     The ongoing scheme revolves around a vast electronic database of auto crash reports maintained by Lexis.  The database consists of all auto crash reports that Lexis has

5

acquired in the past from police agencies.  Once a given crash report has been added to the database, Lexis improperly views that report as Lexis property, which can be freely re-sold multiple times without the need to forward agency fees back to the police agency that produced the report.  The database serves as an inventory for future "repeat" sales of crash reports.  When Lexis receives a new order for an auto crash report, Lexis checks its internal inventory before obtaining the report from a state, local or federal agency.   If Lexis already has the report in inventory, Lexis fraudulently sells the report without notifying the agency or paying the appropriate agency fee.

5.      Lexis has admitted to this scheme in many of its own internal documents.  For example, in a 2013 internal PowerPoint document, the company boasted as follows with regard to sales made by way of the Automated Search Queue or "ASQ":

> [W]hen a police records order comes in, ASQ is searched and if the order is found, the customer gets the report back faster, <u>and we don't incur the agency fee.</u>
>
> The customer still gets charged the full rate <u>(handling fee + agency fee), and it is 100% profit for us.</u>

6.      This PowerPoint constitutes a startling admission to the ongoing fraud.  Contrary to Lexis's beliefs, the deliberate withholding of agency fees from thousands of police departments, many of whom depend on these fees to supplement their budgets, is not "100% profit."  It is fraud.

7.      Lexis has also caused false claims to be submitted upon federal grant money administered by the NHTSA under the authority of 23 U.S.C. § 405, entitled "National Priority Safety Programs."  Under this statute, the NHTSA distributes millions of dollars annually to the States, to be further distributed as grant money in order to promote several traffic safety priorities, including improvements to "state traffic safety information systems."  *See* 23 U.S.C. §

405. To become eligible for grant funding, individual States must establish a Traffic Records Coordinating Committee or "TRCC." *See* 23 C.F.R. § 1200.22. The TRCC must, in turn, establish a Strategic Plan for traffic safety information systems and thereafter review and decide upon applications for federal grant money made within the State.

8.      The vast majority of grant applications to TRCC's come from state and local police agencies. Among other purposes, state and local police agencies frequently apply to state TRCC's for the funding necessary to convert their agencies from old fashioned, paper auto crash reports to new, more efficient electronic crash reporting systems. These changes promote the purposes of section 405 because electronic crash reports allow state and federal authorities to collect, analyze and respond to auto crash data in a much more efficient manner. Converting from paper to electronic crash reports can be very expensive, however, often costing hundreds of thousands of dollars for computer hardware, software and officer training.

9.      Nationwide, many state and local police agencies have applied for and received federal grant funding to implement or expand the Lexis "eCrash" system for electronic crash reporting. Indeed, the Florida TRCC has awarded over $900,000 to Miami-Dade County alone to implement and expand the Lexis eCrash system used by the Miami-Dade Police Department.

10.      By applying for and receiving these grants, Miami-Dade County has unwittingly used federal funds to finance and further a fraud upon the County. If Miami-Dade County had known the truth about Lexis's ongoing fraud against the County, the County would never have sought federal funding to implement or expand the Lexis eCrash system. Likewise, the Florida TRCC would never have awarded federal funding to Miami-Dade County had it known the funds would be used to implement and expand a system that defrauds the County and its taxpayers.

7

11.     Lexis therefore caused Miami-Dade County, and other state and local agencies, to submit false claims upon federal grant funds in order to further Lexis's own fraud upon those state and local agencies, all in violation of the False Claims Act.

## THE PARTIES

12.     The Relator, Christopher Hood, lives and works in Broward County, Florida. From approximately 2014 to the present, Relator has worked for Lexis in various supervisory capacities that involve the acquisition and sale of auto crash reports. Relator's day-to-day duties have allowed him to observe firsthand many of the fraudulent schemes described in this memorandum.

13.     From 2005 to 2014, Relator worked for iyeTek, LLC ("iyeTek"), a company that competed with Lexis in the auto crash business. iyeTek produced and sold software that allowed police officers to create electronic auto crash reports directly from their police vehicles, which reports could be automatically uploaded to iyeTek and sold via the internet. While at iyeTek, Relator served as the National Sales Manager, responsible for interacting with hundreds of local police departments throughout the country. In that capacity, he met with state and local police agencies on a regular basis, assisted them in deploying and using the iyeTek crash reporting system, and handled other customer service responsibilities.

14.     As early as 2011, Lexis recognized that iyeTek had a superior ability to collect auto crash reports due to its advanced crash reporting software and its market presence with state and local police agencies. Lexis, meanwhile, had a superior ability to sell crash reports due to its vast internet presences and data search applications. In October 2011, therefore, Lexis and iyeTek began a strategic relationship, whereby Lexis agreed to sell all of the auto crash reports gathered and collected by iyeTek on behalf of state and local police agencies. The two

8

companies marketed the new relationship to the law enforcement community as the "eCrash Solution." *See* Exhibit 1 (October 18, 2011 Press Release).

15.     Thereafter, in or around May 2014, Lexis formally acquired iyeTek in a corporate transaction.   *See* Exhibit 2 (May 22, 2014 Press Release).   As a result of the acquisition, Lexis assumed ownership of iyeTek's proprietary software systems, and Lexis assumed iyeTek's contractual responsibilities with hundreds of state and local police agencies throughout the country.

16.     Relator stayed with the company through the acquisition.  Since May 2014, he has worked as an employee of Lexis, holding various job titles, but always working in the field of auto crash reporting.   He initially held the title of Senior Subject Matter Expert, with responsibilities over electronic police citations and crash reporting.  In 2015, Lexis promoted him to Senior Vertical Solution Consultant, with responsibilities over the same areas.

17.     On a daily basis, Relator provides technical assistance to Lexis sales representatives across the United States.  He answers technical questions related to acquiring auto crash reports from state and local police agencies and selling them to the public.  Relator also handles Lexis accounts with state and local police agencies in the states of Florida, Michigan, Louisiana, Mississippi, Oklahoma, Kansas, South Carolina, North Carolina and Washington, D.C.  In that capacity, he interacts with state and local police agencies on a wide array of issues related to uploading crash reports, selling them to the public, and paying police agencies their agency fees.

18.     As part of his day-to-day duties at Lexis, Relator has become familiar with Lexis's nationwide procedures for acquiring auto crash reports from police agencies and its nationwide procedures for selling those crash reports to the public.  Relator has access to many

of Lexis's contracts with state and local agencies, and he has access to many of the accounting and billing systems that show sales to the general public and the corresponding payment of agency fees (or the lack thereof) to the agencies that produced the reports. Relator knows the information that is being disclosed to these agencies as well as the information that is being withheld from these agencies.

19.     Defendant, LexisNexis Risk Solutions, Inc. ("Lexis"), is a Georgia corporation with its principal place of business in Alpharetta, Georgia.   Lexis is wholly owned by RELX Group, PLC, a public company with annual revenues that exceed $7 billion.

## JURISDICTION AND VENUE

20.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*. as well as the false claims acts of the State of Florida, Miami-Dade County, the State of New York, the State of California, the State of Illinois, the State of Indiana, the State of Maryland, the Commonwealth of Massachusetts, the State of New Jersey, the State of New Mexico, the State of North Carolina, and the State of Tennessee. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §§ 3732(a) and (b), and 28 U.S.C. §§ 1331 & 1367(a).

21.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and under 31 U.S.C. § 3732(a) because the Defendant transacts business within the district, and some of the acts proscribed by the False Claims Act occurred within the district.

## FACTUAL ALLEGATIONS

### THE NATIONWIDE MARKET FOR AUTO CRASH REPORTS

22.     Lexis collects and sells auto crash reports throughout the entire country. Nationwide, Lexis acquires over 750,000 auto crash reports per month through a variety of

means described below.   The market for auto crash reports has three principal buyers:   (a) drivers and passengers involved in the accident itself, so-called "involved parties"; (2) insurance companies and adjustors, who purchase crash reports in order to evaluate insurance claims arising from accidents; and (3) lawyers, who purchase crash reports in connection with lawsuits arising from accidents.

23.   Historically, most police agencies produced hard-copy, paper crash reports, and they handled the sale of these reports through their own in-house personnel.   A prospective buyer of a crash report had to visit a police agency and purchase the report in a traditional over-the-counter transaction, typically paying $5 - $10 for each report.

24.   The sale of auto crash reports has been, and remains, very lucrative to police agencies, many of whom rely upon this revenue stream to supplement their local budgets.   In large part, this revenue stream depends upon "repeat" sales of the same crash reports.   This is because auto crashes almost always involve more than one driver and, hence, more than one insurance company.   Each insurance company typically purchases its own copy of the report.   If litigation results, personal injury attorneys almost always order their own copy as well.   Many times, multiple personal injury attorneys order the same report.   In short, if a crash report is ordered once, it is almost always ordered multiple times more.

25.   In recent years, many state and local police agencies have begun to outsource the job of collecting, maintaining and selling crash reports to the general public.   Using a variety of electronic platforms, third-party vendors such as Lexis enter into contracts with state and local police agencies to upload and collect auto crash reports and offer them for sale to the public by way of various internet platforms.   Many vendors also offer software that allows police officers

to complete crash reports electronically from their police vehicles and upload the reports directly to the vendor, for immediate sale via the internet.

26.    By entering into such arrangements with third-party vendors, police agencies do not surrender or waive the revenues historically derived from the sale of crash reports.   To the contrary, the third-party vendor almost always agrees to collect the "agency fee" on behalf of the police department and forward that fee back to the agency.   The vendor, in turn, agrees to be paid by way of a "convenience fee" or "handling fee" charged to the buyer of the report.  Thus, in a typical transaction, an insurance company might pay $10 for a crash report, $5 of which consists of an agency fee to be forwarded back to the police agency that produced the report, and $5 of which consists of a convenience fee or handling fee, to be retained by the vendor.

27.    The sale of auto crash reports is a big business. The largest purchasers of auto crash reports, by far, are insurance companies.  Lexis maintains institutional accounts with many of the nation's largest insurance companies for the sale of auto crash reports, including State Farm, Allstate and GEICO.  Over the past ten years, Lexis has expanded its presence in the auto crash market greatly by acquiring many of its competitors, including iyeTek.  Lexis is now the biggest seller of crash reports in the nation.

**HOW LEXIS OBTAINS AUTO CRASH REPORTS**

28.    Lexis obtains crash reports throughout the country in one of three (3) ways:

**Statewide Contracts**

29.    First, many states around the country require all police agencies within the state to submit their crash reports to a single location to be maintained in a central repository.  As an example, Florida requires all agencies to forward their crash reports to the Florida Department of Highway Safety and Motor Vehicles ("DHSMV"), so that the public can purchase reports from

this central location.   Indiana, Georgia and Tennessee have similar systems.   Many of these states have elected to outsource the job of maintaining these statewide crash reports and selling them to the general public.

30.   Lexis currently holds contracts with state agencies in Florida, Georgia, Indiana and Tennessee to maintain the central repository of crash reports for these respective states.  As a result, Lexis has access to *every* crash report from these States and makes them available for sale to authorized members of the public under the terms of written contracts with each of these States.

31.   The terms of these contracts are spelled out in further detail below.  In sum, however, all of these contracts require Lexis to forward agency fees for every sale, including repeat sales of the same crash report.   No state would knowingly surrender the revenue from repeat sales of the same crash report.

### Contracts with Individual Police Agencies

32.   Next, Lexis holds direct contracts with thousands of state and local agencies around the country to obtain and sell their crash reports.   These contracts fall into two categories. First, Lexis has a standard form of auto crash report contract.   A copy of the standard form is attached hereto as Exhibit 3.   The standard Lexis contract provides for the following obligations and responsibilities:

> "Provider [Lexis] will collect a fee as set forth in an applicable order ("Agency Fee") on behalf of Agency for report requests by an Authorized Requester." (§ 5.2)

> "Provider will remit any Agency Fees to Agency using the process as herein defined." (§ 5.2)

> "In connection with this section, on a monthly basis, Provider will electronically transfer to Agency's designated account, the total amount

of applicable Agency Fees collected by Provider during the previous month." (§ 5.2)

"Provider will provide a monthly report to Agency identifying the number of reports provided on its behalf." (§ 5.2)

*See Id.*

33.     On information and belief, Lexis may have utilized other versions of the form contract discussed above.     However, all versions of the Lexis standard contract impose a contractual and legal responsibility to collect and forward agency fees each and every time Lexis sells one of the agency's crash reports. This is standard within the auto crash report industry.

34.     Aside from its standard form contract, Lexis also has thousands of contracts that it inherited by way of corporate acquisitions of competitors.   Because the auto crash report business is extremely profitable, Lexis has been engaged in a campaign in recent years to acquire many of its competitors within the auto crash report industry.

35.     These acquisitions follow a similar pattern.  First, Lexis makes the acquisition and thereby inherits all existing contracts in place between the acquired company and its state and local agency customers.  Next, over time, Lexis migrates or converts these "old" contracts to its current, standard form of Lexis auto crash report contract.  As a result of the many corporate acquisitions made by Lexis, this case includes contractual relationships covered by "old" contracts of acquired companies, as well as "new" contracts put in place following the various acquisitions.  Recent acquisitions include the following:

36.     IyeTek, LLC   In or around May 2014, Lexis acquired IyeTek, a company that sold auto crash report software to police agencies throughout the country. *See* Exhibit 2 (May 22, 2014 Press Release).  At the time of the acquisition, Lexis and iyeTek had already been engaged in a strategic partnership, whereby Lexis was already selling crash reports gathered by

14

iyeTek. By virtue of the acquisition, Lexis inherited hundreds of iyeTek contracts with state and local police agencies across the country. A sample contract is attached as Exhibit 4.

37.    <u>PoliceReports.US</u>  In or around August 2014, Lexis acquired PoliceReports.US, another competitor in the auto crash report business. This company had contracts with over 600 police agencies in 29 states to sell and distribute crash reports via the internet. A sample contract is attached hereto as Exhibit 5.

38.    <u>Apriss</u>  In or around August 2016, Lexis acquired the Crash and Project Business Group of Apriss, Inc. ("Appriss"), another competitor in the auto crash report business. At the time of the acquisition, Apriss had contracts with over 3,500 law enforcement agencies across 38 states. Appriss also held statewide contracts in Florida, Georgia, Tennessee and Indiana. Sample Appriss contracts are attached hereto as Exhibit 6.

39.    The varying forms of contracts at issue in this case do not alter the underlying False Claims Act liability. This is because all of the contracts at issue contain the same substantive provisions, namely, that Lexis must pay the state or local agency fees for each and every sale. No police agency would knowingly surrender revenue from repeat sales of the same crash reports.

**Courier**

40.    Finally, if Lexis does not have a statewide or local contract in place, Lexis obtains crash reports the old fashioned way, *i.e.*, by sending a courier to the agency itself and purchasing the crash report over the counter, or by doing the same through a mail-order request. In such cases, Lexis pays the agency fee directly to the agency in an over-the-counter transaction, then seeks reimbursement from the customer who ordered the report, usually an insurance company.

41.     When a customer purchases a crash report over-the-counter or by mail order, the police agency almost always requires the buyer to complete a form identifying the name of the customer and stating his, her, or its reason for ordering the report.

42.     In thousands of courier and mail-order transactions each year, Lexis routinely makes material misrepresentations and omissions to state, local and federal police agencies as to the identity of its customer.   Specifically, Lexis routinely identifies a single customer, for example, a particular, insurance company, as the purchaser of the report.   In reality, Lexis intends to upload the crash report into its electronic inventory and thereafter sell it multiple times more, without forwarding any agency fees back to the police agency.   In these thousands of transactions, the police agency would never have sold the report had it known Lexis intended to re-sell the report and cheat the agency out of the revenue derived from repeat sales.

## HOW LEXIS OBTAINS CRASH REPORTS IN PARTICULAR STATES

43.     Although Lexis obtains and sells crash reports in every state of the country, Relator has selected fourteen (14) jurisdictions for this lawsuit based on the volume of crash report sales in these locations.   Each of the jurisdictions below has enacted a False Claims Act to protect its agencies from the type of fraud being committed by Lexis.

### Florida

44.     Florida has enacted a False Claims Act that protects the "state." *See* § 68.082(1), Fla. Stat.  Florida defines "state" to mean "the government of the state or any department, division, bureau, commission, regional planning agency, board, district, authority, agency or other instrumentality of the state." *See* § 68.082(1)(f).  This definition covers state agencies, such as the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") and state police agencies, such as the Florida Highway Patrol, but not local police agencies.

45.     As one of the largest states in the country, Florida is a lucrative market for auto crash reports.  Lexis currently holds a contract with the Florida DHSMV to maintain Florida's central repository of auto crash reports and sell them to the public by way of the internet site www.buycrash.com.  Lexis acquired this contract by virtue of its acquisition of Open Portal Solutions, Inc. ("OPS"), a subsidiary of Appriss, which previously won the contract through competitive bidding in 2011.  The contract itself consists of the Invitation to Negotiate issued by DHSMV in 2011 (Exhibit 7), Addendum #1 to the ITN (Exhibit 8), and the Best and Final Offer issued by OPS/Appriss in 2011 (Exhibit 9).

46.     In Florida, DHSMV serves as the central repository for crash reports for all state and local police agencies, pursuant to a statutory scheme outlined in section 316.066, Florida Statutes.  Some agencies prepare crash reports electronically, while others still prepare them in hard copy, paper format.  Regardless of how they prepare crash reports, all agencies must forward their reports to DHSMV, which maintains them and makes them available for sale to the public, as required by law.

47.     Prior to 2011, DHSMV handled most of the work required by section 316.066 by itself.  DHSMV received crash reports from all around the state, managed a large database of reports, and handled sales to the public, selling crash reports for $10 each.  In 2011, DHSMV decided to outsource this work to the private sector.

48.     Accordingly, on March 11, 2011, DHSMV issued an Invitation to Negotiate, or "ITN," titled "Florida Traffic Crash Report Records," Solicitation Number 013-11.  *See* Exhibit 7.  The scope of work for this proposed contract included data entry services, converting paper crash reports into electronic reports, and offering crash reports for sale to the public.  *Id.*

49.    The ITN authorized the prospective vendor to sell crash reports to the public "at the per record fee authorized by s. 316.066 Florida Statute." *Id.* at ¶ 3.2.   The statutory fee at the time was $10 per report.  *See* Exhibit 10.  The ITN unequivocally required daily payment to DHSMV for each crash report sold:

> Through the sale of the crash reports, the Contractor must pay the Department the statutory fee listed in s. 316.066, Florida Statutes *for each crash report sold* and EFT those funds to the Department's account with Bank of America nightly.

*See* Exhibit 7 at ¶ 3.14(k) (emphasis added).

50.    As part of the bid process, potential vendors asked written questions, and DHSMV published its answers in Addendum #1 to the ITN, dated April 4, 2011.  *See* Exhibit 8 at 1. In these answers, DHSMV made clear that the $10 fee was to be charged for *all sales*. *Id.* (Answer to Question #30).   The vendor would also be permitted to charge a "convenience fee," above and beyond the $10, so that the vendor could make a profit on the contract.  *Id.* (Answer to Question #29).

51.    The contract also restricted the vendor's use of crash reports solely to those specified in the contract:

> Crash records and/or other driver or vehicle owner information provided to the Contractor by the Department for purposes of this Contract shall not be used by the Contractor for any purpose not approved in writing by the Department.   The Contractor shall not sell, assign or otherwise transfer, or permit the use of information furnished by the Department to, or by, any other person, firm, association, or corporation unless (i) approved in writing by the Department; and (ii) the use made by the transferee is consistent with the uses permitted by law including the disclosures prohibited by Section 119.07, Florida Statutes.

*See* Exhibit 7, at ¶ 3.12.

52.    The contract further provided for severe penalties in the event the vendor sold any crash reports in a manner inconsistent with the contract.  Specifically, paragraph 2.6(e) provided:

> If Contractor fails to remit to the Department nightly, the fees collected for the sale of Crash Reports (time and date listed in Section 3.16), it will result in substantial injury to the Department, the Contractor agrees to pay the Department one thousand dollars ($1,000) per work day for every day past the agreed upon remittance time and date. Contractor shall not be liable if failure to perform arises out of a cause beyond the control of the Contractor and without the fault or negligence of the Contractor (Acts of God, the public enemy, fires, floods, hurricanes, strikes, freight embargoes, regulated telephone company delays, etc.).

*Id.* at ¶ 2.6(e).

53.     On May 31, 2011, OPS, a subsidiary of Appriss, submitted a Best and Final Offer by which Appriss agreed to be bound by all material requirements of the ITN, including paragraphs 3.2, 3.12 and 3.14. *Id.* at 28, 55 and 57-58, respectively. *See* Exhibit 9. In or around June 2011, DHSMV awarded the contract to OPS/Appriss.

54.     In 2011, the Florida legislature also implemented legislation to require DHSMV to share crash report revenue with local police agencies that produced crash reports. In particular, section 321.23(3), Florida Statutes allows local police agencies to receive $5 for every crash report sold by DHSMV, so long as the agency submits the report within 10 days of the crash.

55.     Thereafter, in order to sell crash reports to the public, OPS/Appriss utilized the website www.buycrash.com. OPS/Appriss offered crash reports for sale for $15.00 each, with the revenue to be divided as follows: $5 to OPS/APRISS, and $10 to DHSMV. In turn, DHSMV was required to forward $5 to local police agencies that produced the report, provided the report was timely.

56.     In or around June 2016, Lexis acquired the Crash and Project Business Group of Appriss and thereby replaced OPS/Appriss as DHSMV's vendor under the statewide contract. As a result of this acquisition, Lexis gained immediate access to all crash reports in Florida by way

of the DHSMV database.   Lexis also acquired the OPS/Apriss contractual and legal responsibility to report the true and correct number of crash reports sold and to forward $10 to DHSMV for each and every crash report sold.

57.    As further described below, Lexis has not abided by these obligations. To the contrary, Lexis has repeatedly submitted false information to DHSMV as to the number of crash reports sold and has underpaid its obligations to DHSMV.   Relator has alleged specific reverse false claims below.

58.    In addition, prior to the Appriss-related acquisition, Lexis also obtained a great many crash reports from DHSMV by courier and mail order.   Lexis routinely made material misrepresentations and omissions when purchasing these crash reports.   That is to say, Lexis and/or its courier routinely identified a single client on whose behalf it was purportedly requesting the crash report.   In reality, Lexis intended to download the report and sell it many times more, thereby depriving DHSMV of the revenue from repeat sales of the same report.

### Miami-Dade County, Florida

59.    Miami-Dade County, Florida has enacted its own False Claims Ordinance to protect the County government from vendor fraud. *See* § 21-255, Miami-Dade County Code of Ordinances.   The ordinance protects the "county," which is defined as "the government of Miami-Dade County or any department, division, bureau, section, commission, planning agency, board, district, authority, agency, or instrumentality of the county, including the Miami-Dade County Public Health Trust." *Id.* at § 21–256(4).

60.    Lexis holds a direct contract with Miami-Dade County to collect and sell crash reports on behalf of the Miami-Dade Police Department.  Lexis acquired this contract by virtue of its acquisition of iyeTek, which, in 2010, had submitted a proposal to Miami-Dade County for

20

implementation of an electronic crash reporting system. The proposal called for iyeTek to provide Miami-Dade County with software that would allow police officers to prepare crash reports electronically, which could be uploaded instantly and sold to the public by iyeTek via the internet.

61.     After much negotiation and revision, in or around March 2012, Miami-Dade County accepted iyeTek's proposal and agreed to the contract attached as Exhibit 11.

62.     Relevant terms include the following.

| Agency | Terms |
|---|---|
| Miami Dade County (Exhibit 11) | "Unless mutually agreed upon [in] writing between the two parties, the cost to the public for the purchase of traffic crash reports will be $10 per report." (§ 11.2)<br><br>iyeTek was to split the revenue from the sale of these crash reports with Miami-Dade County on a 50/50 basis. (Appendix B)<br><br>"The contractor shall be responsible for collecting all payments for transactions completed via Web Services and providing administrative fees to the County on a monthly basis." (§11.4).<br><br>Miami-Dade County retained all intellectual property rights to its materials, data and documentation, and iyeTek had no right to use these materials except in "performance of Services under this Agreement." (§12.2) |

63.     By the time Miami-Dade County signed this contract in March 2012, iyeTek had already begun its "strategic relationship" with Lexis, promoted as the "eCrash Solution," whereby Lexis would be responsible for selling all of Miami-Dade's crash reports.

64.     Also, although Miami-Dade signed the contract in 2012, the eCrash system would not be fully implemented until 2013, as it would cost hundreds of thousands of dollars to implement the system. Like many police agencies around the country, Miami-Dade County

applied for and received federal grant money to implement the Lexis eCrash system, further described below.

65.     Following the implementation, in or around May 2014, Lexis formally acquired iyeTek in a corporate transaction.  As a result of this corporate acquisition, Lexis assumed the Miami-Dade County contract in full, including iyeTek's legal obligation to forward 50% of all revenue generated from the sale of crash reports to Miami-Dade County on a monthly basis. Lexis subsequently confirmed its legal obligations by executing a formal assignment of the Miami-Dade contract in 2015. *See* Exhibit 12 (Acceptance of Assignment/Transfer of Contract).

66.     At all times that Lexis has done business with Miami-Dade County, Lexis owed a contractual and legal responsibility to share fees with the Miami-Dade County each and every time Lexis sold a Miami-Dade County crash report.  As set forth below, Lexis has not abided by its obligations.  To the contrary, Lexis has repeatedly submitted false information to Miami-Dade County as to the number of crash reports sold, and Lexis has underpaid its obligations to Miami-Dade County.  Relator has alleged specific reverse false claims below.

67.     In addition, prior to implementation of the eCrash system, Lexis obtained a great many crash reports from Miami-Dade County by courier and mail order.  Lexis routinely made material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identified a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intended to download the report and sell it many times more, thereby depriving Miami-Dade County of the revenue from repeat sales of the same report.

22

## Georgia

68.     Georgia has enacted a False Claims Act that protects both its "state" and "local"

governments from fraud.  *See* Georgia Code Ann., § 23-3-121(a).  Georgia defines "state" to

mean "the State of Georgia and any State Department, board, bureau, division, commission,

committee, public benefit corporation, public safety authority, counsel, office, or other

governmental entity performing a governmental or proprietary function for this state." *Id.* at §

23-3-120(6).    Georgia defines "local government" to include any "county" or "municipal

corporation" *Id.* at § 23-3-120(3).  The Georgia FCA thus applies to all state and local police

agencies within the state.

69.     Lexis acquires large volumes of crash reports in Georgia, where it holds a

statewide contract with the Georgia Department of Transportation to operate the Georgia

Electronic Accident Reporting System, also known as "GEARS."  Under the statewide contract,

Lexis maintains Georgia's central repository of auto crash reports and sells them to the general

public by way of the internet site www.buycrash.com.

70.     Lexis acquired this contract by virtue of its acquisition of OPS, a, a subsidiary of

Appriss, which previously won the contract through competitive bidding in 2009 and again in

2014. *See* Exhibit 13 (Request for Proposal); Exhibit 14 (Notice of Award to Appriss)

71.     Under the Georgia contract, Appriss entered into hundreds of sub-agreements

with individual state and local police agencies using a standard form titled "Georgia Law

Enforcement Agency Crash Reimbursement Agreement."  A sample is attached as Exhibit 15.

The agreement provides as follows:

> In 2009 and 2014, via competitive bidding process, the Georgia
> Department of Transportation authorized Appriss Inc. (formerly Open
> Portal Solutions), to reimburse local Georgia law enforcement agencies

a portion of the amount from crash report sales made by APPRISS on behalf of the department.

Law enforcement agencies executing this agreement will receive up to $5.00 per report on individual crash reports sold which they author and submit to the Georgia Department of Transportation. Reimbursements apply to reports sold via www.buycrash.com

. . .

A reimbursement of up to $5.00 per report for each crash report sold via www.buycrash.com. Reports electronically submitted to GDOT = $5.00. Reports scanned and FTP transmitted = $3.00. Reports completed on paper and mail to GDOT =$2.00.

Reimbursements are paid on a monthly basis via ACH direct deposit to the agencies designated bank account or by check mail to your agency.

Emailed monthly auditing reports which detail each report sold and revenue earned.

*Id.* The Georgia sub-agreements leave no doubt that reimbursement applies "per report sold."

*Id.*

72.     At all times that Lexis has done business with Georgia's state and local police agencies,   Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report.  As set forth below, Lexis has not abided by its obligations. To the contrary, Lexis has repeatedly submitted false information to Georgia's state and local police agencies as to the number of crash reports sold and has underpaid its obligations with regard to repeat sales of the same crash reports.

73.     In addition, prior to the Appriss-related acquisition, Lexis obtained a great many crash reports from Georgia state and local agencies by courier and mail order.  Lexis routinely made material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identified a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intended to download the report and

24

sell it many times more, thereby depriving Georgia state and local agencies of the revenue from repeat sales of the same report.

### New York

74.    New York has enacted a False Claims Act that protects both "state" and "local" government from fraud. *See* McKinney's State Finance Law § 188. New York defines "state" to mean "the state of New York in any department, board, bureau, division, commission, committee, public benefit corporation, public authority, counsel, office or other governmental entity performing a governmental or proprietary function for the state. *Id.* at § 188(9). New York defines "local government" as "any New York county, city, town, village, school district, board of cooperative educational services, local public benefit corporation or other municipal corporation or political subdivision of the state, or of such local government." *Id.* at § 188(6). The New York FCA thus covers all state and local police agencies in the State.

75.    As one of the largest states in the country, New York is another leader in producing crash reports. Lexis obtains crash reports in New York by way of hundreds of contracts with state and local police agencies including the following:

| | | | |
|---|---|---|---|
| Batavia PD | City of Middletown | Endicott PD | Ilion PD |
| Beacon City PD | PD | Floral Park PD | Ithaca PD |
| Bedford PD | Clinton County | Freeport PD | Jamestown PD |
| Brighton PD | Sheriff's Office | Gates PD | Johnson City PD |
| Broome County | Coeymans PD | Genesee County | Kingston PD |
| Sheriff's Office | Cohoes PD | Sheriff's Office | Lewiston PD |
| Canajoharie PD | Columbia County | Glens Falls PD | Livingston County |
| Canandaigua PD | Sheriff's Office | Glenville PD | Sheriff's Office |
| Cattaraugus County | Delaware County | Goshen PD | Long Beach PD |
| Sheriff's Office | Sheriff's Office | Greece PD | Macedon Town PD |
| Cayuga County | Dutchess County | Greene County | Madison County |
| Sheriff's Office | Sheriff's Department | Sheriff's Office | Sheriff's Office |
| Chatham PD | East Hampton Town | Greenwood Lake PD | Manlius PD |
| Cheektowaga PD | PD | Guilderland PD | Monroe County |
| Chester PD | Eastchester PD | Horseheads PD | Sheriff's Office |
| | Elmira PD | Hudson Falls PD | |

| | | | |
|---|---|---|---|
| Montgomery County Sheriff's Office | Otsego County Sheriff's Office | Seneca County Sheriff's Office | Village of Mamaroneck |
| Monticello PD | Plattsburgh PD | Seneca Falls PD | Wallkill PD |
| Mt. Vernon PD | Port Authority of NY and NJ | Southampton Town PD | Warren County Sheriff's Office |
| Nassau County PD | | | |
| New Castle PD | Port Jervis PD | Steuben County Sheriff's Office | Warwick Township PD |
| New Hartford PD | Port Washington PD | | |
| Newark PD | Poughkeepsie PD | Suffolk County PD | Washington County Sheriff's Office |
| Newburgh City PD | Rochester NY PD | Tioga County Sheriff's Office | Watervliet PD |
| Niagara County Sheriff's Office | Rockville Centre PD | | |
| | Rome PD | Tompkins County Sheriff's Office | Wayne County Sheriff's Office |
| Niagara Falls PD | Rye Brook PD | | Webster PD |
| Niskayuna PD | Saratoga County Sheriff's Office | Town of Fallsburg PD | |
| Norfolk PD | | Town of Niagara PD | Wellsville Village PD |
| North Tonawanda PD | Saratoga Springs PD | Troy City PD | West Seneca PD |
| NYS University Police-Morrisville | Schenectady PD | Tuxedo PD | Whitehall PD |
| | Schuyler County Sheriff's Office | Ulster PD | Yates County Sheriff's Office |
| Old Brookville PD | | Vestal PD | |
| | | Village of Liberty PD | Yorktown PD |

76.     Relator brings this action on behalf of the above municipalities as well.  Relator has not attached all of the above contracts to this Complaint.  Relator has attached four contracts as representative samples, the Suffolk County Police Department (this is one of Lexis's largest contracts in the country by volume of crash reports), the Washington County Sheriff's Office, the Warren County Sheriff's Office, and the Schenectady Police Department.

77.     These contracts provide as follows, in relevant part:

| Agency | Terms |
|---|---|
| Suffolk County Police Department (Exhibit 16) | Contract began September 2014 <br><br> Contract acquired through acquisition of Appriss <br><br> Relevant Terms: <br><br> "Appriss, Inc. will charge a fee of $20 per report generated online to consumer for consumer use; $6 of which will be kept by Appriss, Inc., as a service charge, and the remaining $14 will be remitted to Suffolk County Police Department." (p. 7). |

| Agency | Terms |
|---|---|
| Washington County Sheriff's Office (Exhibit 17) | Contract began in May 2013<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant Terms:<br><br>"The total fee for each report/photo: $7.00.<br>PoliceReports.US per report/photo fee: $5.00.<br>Amount returned per report/photo: $2.00."<br>(p. 2) |

| Agency | Terms |
|---|---|
| Warren County Sheriff's Office (Exhibit 18) | Contract began March 2010<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant Terms:<br><br>"The fee collected for each report distributed is: $5.00.<br>PoliceReports.US per report fee: $3.00<br>Amount returned to the agency per report is $2.00"<br>(p.1) |

| Agency | Terms |
|---|---|
| Schenectady Police Department (Exhibit 19) | Contract began in 2011<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant Terms:<br><br>"The fee collected for each report distributed is: $9.00.<br>PoliceReports.US per report fee: $4.00<br>Amount returned per report distributed is $5.00"<br>(p. 2). |

27

78.    At all times that Lexis has done business with the state and local agencies in New York under these and other contracts, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report.  As set forth below, Lexis has not abided by its obligations.  To the contrary, Lexis has repeatedly submitted false information to state and local agencies in New York as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies.  Relator has alleged specific reverse false claims below.

79.    In addition, Lexis obtains a great many crash reports from state and local agencies in New York by courier and mail order.  Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intends to download the report and sell it many times more, thereby depriving these agencies of the revenue from repeat sales of the same report.

### California

80.    California has enacted a False Claims Act that protects the "state" government as well as its "political subdivisions."  *See* Cal. Gov. Code § 12650(b)(2).  The California FCA defines "political subdivisions" to include "any city, city and County, County, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries." *Id.* at § 12650(b)(6).  The California FCA thus covers all state and local police agencies in the State.

81.    As one of the largest states in the country, California is a leader in producing auto crash reports.  Lexis obtains crash reports in California in two ways.  First, Lexis has hundreds of contracts with local police agencies throughout California, including the following:

| | | | |
|---|---|---|---|
| Anaheim PD | Fontana PD | Orland PD | San Mateo County |
| Anderson PD | Fountain Valley PD | Oxnard PD | Sheriff, San Carlos |
| Arcadia PD | Fullerton PD | Pacifica PD | San Mateo County |
| Atascadero PD | Gardena PD | Pasadena PD | Sheriff, |
| Bakersfield PD | Glendale PD | Paso Robles PD | Unincorporated |
| Baldwin Park PD | Glendora PD | Perris PD | Santa Ana PD |
| Beaumont PD | Hanford PD | Petaluma PD | Santa Barbara PD |
| Bell Gardens PD | Hawthorne PD | Pittsburg PD | Santa Maria PD |
| Benicia PD | Hemet PD | Placentia PD | Seal Beach PD |
| Beverly Hills PD | Huntington Beach PD | Placer County | South Gate PD |
| Brentwood PD | Indio PD | Sherriff's Office | South Lake Tahoe PD |
| Buena Park PD | Inglewood PD CA | Pomona PD | South Pasadena PD |
| Burbank PD | Jurupa Valley PD | Red Bluff PD | Stockton PD |
| Burlingame PD | La Palma PD | Redding PD | Suisun City PD |
| California State | Lake Elsinore PD | Redlands PD | Sunnyvale Dept. of |
| University Fullerton | LAPD | Redwood City PD | Public Safety |
| PD | Mammoth Lakes PD | Richmond PD | Temecula PD |
| Ceres PD | Manteca PD | Riverside PD | Torrance PD |
| City of San Jacinto | Merced PD | Rohnert Park Dept. of | Tulare PD |
| Colton PD | Montebello PD | Public Safety | Turlock PD |
| Concord PD | Monterey Park PD | Roseville PD | Tustin PD |
| Corona PD | Moreno Valley PD | Sacramento PD | Union City PD |
| Cotati PD | Morgan Hill PD | San Diego PD | Upland PD |
| Culver City PD | Mountain View PD | San Francisco PD | Ventura PD |
| Danville PD | Murrieta PD | San Leandro PD | Visalia PD |
| Downey PD | National City PD | San Mateo County | Walnut Creek PD |
| El Cerrito PD | Newark PD | Sheriff, Half Moon | |
| Escondido PD | Oakland PD | Bay | |
| Fairfield PD | Oceanside PD | San Mateo County | |
| Folsom PD | Ontario PD | Sheriff, Millbrae | |

82.    Relator brings this action on behalf of these municipalities as well.  Relator has not attached all of the above contracts to this Complaint.  Relator has attached four contracts as representative samples: the Ventura Police Department (Exhibit 20), the Huntington Beach Police Department (Exhibit 21), the Burlingame Police Department (Exhibit 22) and the South Gate Police Department (Exhibit 23).  These contracts provide as follows, in relevant part:

| Agency | Terms |
|---|---|
| Ventura Police Department (Exhibit 20) | Contract began in or around 2008<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant terms:<br><br>"E-Commerce Fees<br>The fee collected for each report distributed is: $17.00.<br>PoliceReports.US fee per report is: $3.00<br>Amount returned to the agency per report is: $14.00."<br>(p.11) |

| Agency | Terms |
|---|---|
| Huntington Police Department (Exhibit 21) | Contract began in or around 2010<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant terms:<br><br>"E-Commerce Fees<br>The fee collected for each report distributed is: $3.50.<br>PoliceReports.US fee per report is: $3.00<br>Amount returned to the agency per report is: $0.50"<br>(p. 1). |

| Agency | Terms |
|---|---|
| Burlingame Police Department (Exhibit 22) | Contract began in or around 2011<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant terms:<br><br>"The fee collected for each report distributed is: $4.00 + $2.00 per page.<br>PoliceReports.US per report fee: $4.00<br>Amount returned per report distributed is: $2.00 per page."<br>(p. 3). |

| Agency | Terms |
|---|---|
| South Gate Police Department (Exhibit 23) | Contract began December 1, 2010<br><br>Contract acquired through acquisition of PoliceReports.US<br><br><u>Relevant terms:</u><br><br>"The fee collected for each report distributed is: $6.00.<br>PoliceReports.US per report fee: $4.00.<br>Amount returned per report distributed: $2.00"<br>(p. 1). |

83.     At all times that Lexis has done business with agencies in California under these and other contracts, Lexis owed a contractual and legal responsibility to accurately report sales to the agencies and forward the correct amount of agency fees for each and every crash report sale. As further described below, Lexis has not abided by these obligations. To the contrary, Lexis has repeatedly submitted false information to California agencies as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies. Relator has alleged specific reverse false claims below.

84.     Next, Lexis obtains large volumes of crash reports in California by way of courier and mail order. In fact, Lexis obtains all of its crash reports from the California Highway Patrol ("CHP") in this fashion. Relator has attached hereto as Exhibit 24, the State of California, Department of California Highway Patrol Form 190, entitled "Application for Release of Information." This form requires the purchaser of a crash report to attest to certain information, including whether the purchaser qualifies as one of the following:

> Person involved (indicate whether driver, passenger, property owner, pedestrian, registered owner);
>
> Family member (indicate relationship);

Other party of interest, specify;

Legal Rep. (attorney, guardian, conservator or);

Representative of insurance company or insurance adjusting agency (must have been a carrier for involved party at time of accident. Policy or claim number must be presented.);

Manufacturer representative (must have a letter from manufacturer certifying authority dated within the last year);

Self-insured: name; or

Authorized person (must have signed authorization) indicate person represented.

*See Id.*.

85.    The CHP charges $10.00 for each crash report sold, up to 25 pages.   The CHP requires the above attestation not only to comply with state privacy laws that restrict access to auto crash reports, but also to control the sale of reports.   Each year, Lexis obtains many thousands of crash reports from the CHP by making material misrepresentations and omissions on the CHP Form 190.   In particular, Lexis and/or its courier identifies a single client on whose behalf it is purportedly requesting the crash report.   In reality, Lexis intends to download the report and sell it many times more, thereby depriving the CHP of revenue from repeat sales of the same report.

### Illinois

86.    Illinois has enacted a False Claims Act that protects the "State," which is defined to include "any agency of state government, the system of state colleges and universities, any school district, community college district, county, municipality, municipal corporation, unit of local

government, and any combination of the above…" *See* § 740 ILCS 175/2.   This definition

covers all state and local police agencies in Illinois.

87.   Lexis does substantial business in the State of Illinois, where it obtains crash reports

by way of hundreds of contracts with state and local police agencies.   These include the

following:

Adams County
Sheriff's Office
Addison PD
Algonquin PD
Alsip PD
Alton PD
Anna PD
Arlington Heights PD
Ashland PD
Ashton PD
Aurora PD
Barrington Hills PD
Barrington PD
Bartonville PD
Batavia PD
Beardstown PD
Beckemeyer PD
Bedford Park PD
Belleville PD
Bellwood PD
Bement PD
Bensenville PD
Berkeley PD
Berwyn PD
Bethalto PD
Black Hawk College
PD, Kewanee Campus
East
Black Hawk College,
PD, Main Campus
Moline/Quad Cities
Bloomingdale PD
Bloomington PD
Bolingbrook PD
Braidwood PD

Breese PD
Bridgeview PD
Broadview PD
Brookfield PD
Buffalo Grove PD
Burbank PD
Bureau County
Sheriff's Office
Burr Ridge PD
Calhoun County
Sheriff's Office
Calumet City PD
Calumet Park PD
Canton PD
Carlinville PD
Carol Stream PD
Carrier Mills PD
Carthage PD
Cary PD
Cass County Sheriff's
Office
Champaign County
Sheriff's Office
Champaign PD
Channahon PD
Charleston PD
Chatham PD
Chenoa PD
Cherry Valley PD
Chicago Ridge PD
Christian County
Sheriff's Office
Clark County Sheriff's
Office

Clinton County
Sheriff's Office
Clinton PD
Coal City PD
Coal Valley PD
Coles County Sheriff's
Office
Collinsville PD
Columbia PD
Cook County Sheriff
Police
Countryside PD
Cowden PD
Crest Hill PD
Crestwood PD
Crete PD
Creve Coeuer PD
Crystal Lake PD
Dallas City PD
Darien PD
Deer Creek PD
Deerfield PD
Dekalb County Sheriff
Dekalb PD
DeWitt County
Sheriff's Office
Dixon PD
Douglas County
Sheriff's Office
Downers Grove PD
Dupage County
Sheriff's Department
East Dundee PD
East Galesburg PD
East Hazel Crest PD

East Moline PD
East Peoria PD
East St. Louis PD
Edgar County Sheriff's
Office
Edinburg PD
Edwards County
Sheriff's Department
Edwardsville PD
Eldorado PD
Elgin PD
Elmhurst PD
Elmwood Park PD
Elsah PD
Elwood PD
Eureka PD
Evanston PD
Evergreen Park PD
Fairfield PD
Fairview Heights PD
Farmington PD
Fisher PD
Flossmoor PD
Ford County Sheriff's
Office
Forest View PD
Fox Valley Park
District PD
Frankfort PD
Franklin Park PD
Freeport PD
Fulton PD
Galena PD
Galesburg PD
Geneseo PD

Geneva PD
Genoa PD
Georgetown PD
Gifford PD
Gilberts PD
Gillespie PD
Glen Carbon PD
Glen Ellyn PD
Glencoe Public Safety
Glendale Heights PD
Glenview PD
Grantfork PD
Grayslake PD
Grayville PD
Grundy County
Sheriff's Office
Gurnee PD
Hamel PD
Hamilton PD
Hampshire PD
Hampton PD
Hancock County
Sheriff
Hanover Park PD
Harrisburg City PD
Hartford PD
Harvard PD
Harwood Heights PD
Havana PD
Hawthorn Woods PD
Henderson County
Sheriff's Office
Hickory Hills PD
Highland Park PD
Highwood PD
Hillsboro PD
Hillside PD
Hinckley PD
Hinsdale PD
Homer PD
Hometown PD
Homewood PD
Hudson PD
Huntley PD
ISU Police

Island Lake PD
Joliet PD Justice PD
Kane County Sheriff's
Office
Kankakee PD
Kenilworth PD
Kewanee IL PD
Kildeer PD
Kincaid PD
Knox County Sheriff's
Office
Knoxville PD
Lake County Sheriff's
Office
Lake in the Hills PD
Lake Villa PD
Lake Zurich PD
Lakemoor PD
Lakewood Village PG
LaSalle County
Sheriff's Office
Lawrence County
Sheriff's Office
Lee County Sheriff's
Office
LeRoy PD
Lewis University PD
Lexington PD
Libertyville PD
Lincoln PD
Lincolnshire PD
Lincolnwood PD
Lindenhurst PD
Lisle PD
Litchfield PD
Lombard PD
Loves Park PD
Lyons PD
Macomb PD
Macon County
Sheriff's Office
Madison PD
Mahomet PD
Marion PD
Marissa PD

Markham PD
Maroa PD
Maryville PD
Mason City PD
Mason County
Sheriff's Office
Massac County
Sheriff's Office
Matteson PD
Mattoon PD
McHenry County
Sheriff's Office
McHenry PD
Melrose Park PD
Mendota PD
Metropolis PD
Midlothian PD
Millstadt PD
Minooka PD
Moline PD
Monmouth PD
Monroe County
Sheriff's Office
Montgomery PD
Monticello PD
Moraine Valley
Community College
PD
Morgan County
Sheriff's Office
Morris PD
Morrison PD
Morton Grove PD
Morton PD
Mt. Olive PD
Mt. Pulaski PD
Mundelein PD
Naperville PD
Nashville PD
Neoga PD
New Athens PD
New Lenox PD
Niles PD
Normal PD
Norridge PD

North Aurora PD
North Chicago PD
North Pekin PD
North Riverside PD
Northbrook PD
Northfield PD
Oak Brook PD
Oak Forest PDOak
Lawn PD
Oakbrook Terrace PD
Ofallon PD
Olney PD
Olympia Fields PD
Oregon PD
Orland Hills PD
Oswego PD
Ottawa PD
Palatine PD
Palos Park PD
Pana PD
Park Forest PD
Park Ridge PD
Parkland College PD
Pawnee PD
Pekin PD
Peoria PD
Peoria County Sheriff's
Office
Peotone PD
Percy PD
Phoenix PD
Piatt County Sheriff's
Office
Pike County Sheriff's
Office
Pingree Grove PD
Pittsfield PD
Plano PD
Pleasant Plains PD
Pontoon Beach PD
Posen PD
Prairie Grove PD
Princeton PD
Pulaski County
Sheriff's Office

| | | | |
|---|---|---|---|
| Quincy PD | Saline County Sheriff's | Stephenson County | Warsaw PD |
| Randolph County | Office | Sheriff's Office | Washington County |
| Sheriff's Office | Sandoval PD | Sterling PD | Sheriff's Office |
| Rantoul PD | Sangamon County | Stone Park PD | Washington PD |
| Richland County | Sheriff's Office | Stonington PD | Waterloo PD |
| Sheriff's Office | Schaumburg PD | Streamwood PD | Wauconda PD |
| Richmond PD | Schiller Park PD | Streator PD | Waukegan PD |
| Richton Park PD | Seneca PD | Sugar Grove PD | West Chicago PD |
| Ridge Farm PD | Shelby County | Sullivan PD | Westchester PD |
| River Forest PD | Sheriff's Office | Summit PD | Western Springs PD |
| River Grove PD | Sherman PD | Swansea PD | Westville PD |
| Riverdale PD | Shiloh PD | Sycamore PD | Wheaton PD |
| Riverside PD | Shorewood PD | Taylorville PD | Wheeling PD |
| Riverwoods PD | Silvis PD | Tazewell County | White County Sheriff's |
| Robinson PD | Skokie PD | Sheriff's Office | Office |
| Rochester IL PD | Somonauk PD | Thomasboro PD | Whiteside County |
| Rock Falls PD | South Barrington PD | Thornton PD | Sheriff's Office |
| Rock Island City PD | South Chicago Heights | Tolono PD | Will County Sheriff's |
| Rock Island County | PD | Tower Lakes PD | Office |
| Sheriff's Office | South Holland PD | Tremont PD | Williamsfield PD |
| Rockdale PD | South Jacksonville PD | Trenton PD | Willowbrook PD |
| Rockford PD | South Roxanna PD | Troy PD | Wilmette PD |
| Rolling Meadows PD | Southwestern Illinois | Tuscola PD | Wilmington PD |
| Romeoville PD | College PD | Union County Sheriff's | Winsfield PD |
| Roscoe PD | Spring Grove PD | Office | Winnebago County |
| Roselle PD | Springfield Park | Urbana PD | Sheriff's Office |
| Rosemont Public | District PD | Vandalia PD | Wood Dale PD |
| Safety | Springfield PD | Vernon Hills PD | Woodhull PD |
| Round Lake Beach PD | St. Clair County Sheriff | Villa Park PD | Woodridge PD |
| Round Lake PD | St. Charles PD | Village of Westmont | Woodstock PD |
| Roxana PD | St. Elmo PD | PD | Yates City PD |
| Rushville PD | Steeleville PD | Warren PD | Zeigler PD |
| | Steger PD | Warrenville PD | |

88.     Relator has not attached all of the above contracts to this Complaint. Relator has attached three contracts as representative samples, the Rock Island Police Department, the Rockford Police Department, and the South Roxana Police Department.

89.     These contracts provide as follows, in relevant part:

| Agency | Terms |
| --- | --- |
| Rock Island Police Department (Exhibit 25) | Contract began June 2014<br><br>Contract acquired through Appriss-related acquisition<br><br>Relevant Terms:<br><br>"Appriss will distribute crash reports on behalf of, and as an agent for, agency via the Internet (e-commerce) and other electronic means and distribute data extracted from crash reports." (p.1)<br><br>"Amount agency will receive for each crash report sold by Appriss to an authorized user: $5." (p. 3). |

| Agency | Terms |
| --- | --- |
| Rockford Police Department (Exhibit 26) | Contract began March 2013<br><br>Lexis Standard Form Contract.<br><br>Relevant Terms:<br><br>"LexisNexis will collect on behalf of the agency and remit to agency using the process as herein defined, an Agency Fee in the amount of $5.00 for each crash report provided by LexisNexis to an authorized requestor.  On a monthly basis, LexisNexis will electronically transfer to Agency's designated account, the total amount of the applicable agency fees collected by LexisNexis during the previous month. In addition, LexisNexis will provide a monthly report to agency of the number of crash reports provided on its behalf." (§4.b) |

| Agency | Terms |
| --- | --- |
| South Roxana Police Department (Exhibit 27) | Contract began January 13, 2012<br><br>Contract acquired through acquisition of iyeTek, LLC |

<table>
<tr><td></td><td>

Relevant Terms:

"Fee payable from iyeTek to Agency" $5 / Report delivered to requesting party (excluding electronic versions of crash reports provided free of charge to a requesting Agency). (p. 1)

</td></tr>
</table>

90.     At all times that Lexis has done business with state and local police agencies in Illinois under these and other contracts, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report. As set forth below, Lexis has not abided by its obligations. To the contrary, Lexis has repeatedly submitted false information to state and local police agencies in Illinois as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies.

91.     In addition, Lexis obtains a great many crash reports from Illinois state and local agencies by courier and mail order. Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports. That is to say, Lexis and/or its courier routinely identifies a single client on whose behalf it is purportedly requesting the crash report. In reality, Lexis intends to download the report and sell it many times more, thereby depriving Illinois state and local agencies of the revenue from repeat sales of the same report.

**Indiana**

92.     Indiana has enacted a False Claims Act that protects the "State," which is defined as follows: "'State' means Indiana or any agency of state government. The term does not include a political subdivision." *See* Indiana Code § 5-11-5.5-1(7). This definition covers state police agencies such as Indiana State Police, but not local police agencies.

93.     Lexis acquires large volumes of crash reports in Indiana, where it holds a statewide contract with the Indiana State Police to operate the Automated Record Information Exchange System, also known as "ARIES." Under this contract, Lexis maintains Indiana's central repository of auto crash reports and sells them to the public by way of the internet site www.buycrash.com. Lexis acquired this contract by virtue of its acquisition of the Crash and Project Group of Appriss in 2016.

On information and belief, the Indiana contract contains similar language to the statewide Appriss contracts in place in Florida, Georgia and Tennessee. In particular, the statewide contract requires Lexis to forward an $8.00 agency fee back to the state or local agency for each and every sale of an Indiana crash report, while Lexis retains a $4.00 convenience fee. In support, Relator has attached hereto as Exhibit 28, internal daily reports prepared by Lexis that show the agency fee (referred to as "report fee" and "royalty revenue") that Lexis is supposed to pay for Indiana State Police crash reports.

94.     At all times that Lexis has done business with state police agencies in Indiana, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report. As set forth below, Lexis has not abided by its obligations. To the contrary, Lexis has repeatedly submitted false information to Indiana state police agencies as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies. Relator has alleged specific reverse false claims below.

### Maryland (City of Baltimore)

95.     Maryland has enacted a False Claims Act that protects all "governmental entities" in the State. *See* Maryland Code § 8-101. Maryland defines "governmental entity" to mean "(1)

the State; (2) a county; or (3) a municipal corporation." This definition covers municipalities in Maryland and their police agencies.

96. Lexis does substantial business in the State of Maryland, where it obtains crash reports by way of a contract with the City of Baltimore. Lexis acquired this contract by way of its acquisition of PoliceReports.US in 2014. Relator has attached the Baltimore contract as Exhibit 29.

97. This contract provides as follows, in relevant part:

| Agency | Terms |
|---|---|
| Baltimore Police Department (Exhibit 29) | Contract began September 1, 2010<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant Terms:<br><br>"The Contractor hereby agrees to pay and the City agrees to accept $10.00 for each Report with an estimated revenue of $900,000 for 5 years…" (p. 1)<br><br>"The fee collected for each report distributed is $14.00<br>Contractor per report fee $4.00<br>Amount returned to City $10.00." (p. 2). |

98. At all times that Lexis has done business with the City of Baltimore, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report. As set forth below, Lexis has not abided by its obligations. To the contrary, Lexis has repeatedly submitted false information to the Baltimore Police Department as to the number of crash reports sold, and Lexis has underpaid its obligations to this agency. Relator has alleged specific reverse false claims below.

99.     In addition, prior to the acquisition of PoliceReports.US, Lexis obtained a great many crash reports from the Baltimore Police Department by courier and mail order.  Lexis routinely made material misrepresentations and omissions when purchasing these crash reports. That is to say, Lexis and/or its courier routinely identified a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intended to download the report and sell it many times more, thereby depriving the Baltimore Police Department of the revenue from repeat sales of the same report.

## Massachusetts

100.    Massachusetts has enacted a False Claims Act that protects the "commonwealth" as well as its "political subdivisions."  *See* M.G.L.A. 12 § 5A.  Massachusetts defines "political subdivision" as a "city, town, county or other governmental entity authorized or created by law, including public corporations and authorities."  *Id.*   The Massachusetts FCA thus covers all state and local police agencies within the State.

101.    Lexis obtains crash reports in Massachusetts by way of hundreds of contracts with local police agencies, including the following:

| | | | |
|---|---|---|---|
| Abington PD | Brewster | Douglas PD | Greenfield PD |
| Aquinnah PD | Bridgewater PD | Dover PD | Groton PD |
| Arlington PD | Brockton PD | Dracut PD | Hampden |
| Ashburnham PD | Canton PD | Duxbury PD | Harvard PD |
| Ashland PD | Chatham PD | Eastham | Harwich PD |
| Attleboro PD | Chelmsford PD | Easton PD | Haverhill |
| Ayer PD | Chelsea PD | Everett PD | Hingham PD |
| Barnstable | Cohasset PD | Fairhaven PD | Holbrook PD |
| Barre PD | Concord PD | Fitchburg | Holden |
| Bellingham PD | Dalton | Framingham PD | Holliston PD |
| Blackstone PD | Dartmouth PD | Franklin PD | Holyoke |
| Bourne PD | Dedham PD | Freetown PD | Hubbardston PD |
| Boxborough PD | Dennis | Georgetown   PD | Hudson |
| Braintree | Dighton PD | Gloucester PD | Ipswich |

| | | | |
|---|---|---|---|
| Kingston | New Bedford  PD | Salisbury | Wareham   Watertown |
| Lakeville | New Braintree PD | Saugus | PD |
| Lancaster | Newbury North Adams | Scituate PD | Webster |
| Leicester PD | North  Andover PD | Seekonk PD | Wellesley PD |
| Leominster PD | North  Attleboro PD | Sherborn PD | Wenham |
| Lincoln PD | Norton PD | Somerset PD | West   Springfield PD |
| Littleton PD | Norwell PD | Southampton  PD | Westfield PD |
| Longmeadow  PD | Norwood PD | Southborough  PD | Westford PD |
| Ludlow PD | Oakham PD | Southwick | Westminster PD |
| Lynnfield | Oxford PD | Springfield PD | Westwood PD |
| Manfield PD | Peabody | Sterling PD | Weymouth PD |
| Marion PD | Pembroke PD | Stockbridge   PD | Wilbraham |
| Marlborough PD | Pepperell | Stoughton PD | Williamsburg  PD |
| Mashpee | Pittsfield PD | Topsfield | Wilmington PD |
| Maynard | Plymouth PD | Truro | Winchendon PD |
| Medford PD | Princeton PD | Tyngsborough PD | Winchester |
| Medway | Provincetown | Wakefield PD | Woburn PD |
| Mendon PD | Randolph PD | Walpole PD | Worcester PD |
| Methuen PD | Rochester PD | Waltham PD | Wrentham PD |
| Milford PD | Rockland PD | Ware PD | Yarmouth PD |
| Needham PD | Rutland PD | | |

102.    Relator brings this action on behalf of the above municipalities as well.  Relator has

not attached all of the above contracts to this Complaint.  Relator has attached three contracts as

representative samples, the Stoughton Police Department, the Marlborough Police Department,

and the Brockton Police Department.

103.    These contracts provide as follows, in relevant part:

| Agency | Terms |
|---|---|
| Stoughton Police Department (Exhibit 30) | Contract began in or around 2011<br><br>Contract acquired through acquisition of PoliceReports.US<br>Relevant terms:<br><br>"The fee collected for each report distributed is: $9.00.<br>PoliceReports.US per report fee $4.00.<br>Amount returned per report distributed $5.00."<br>(p. 1). |

| Agency | Terms |
|---|---|
| Marlborough Police Department (Exhibit 31) | Contract began in May 2011.<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant terms<br><br>"The fee collected for each report distributed is: $9.00. PoliceReports.US per report fee $4.00. Amount returned per report distributed $5.00." (p. 2) |

| Agency | Terms |
|---|---|
| Brockton Police Department (Exhibit 32) | Contract began August 2013.<br><br>Contract acquired through acquisition of PoliceReports.US<br><br>Relevant terms<br><br>"The total fee for each report/photo: $10.00. PoliceReports.US per report/photo fee: $5.00. Amount returned per report/photo: $5.00." (p. 2). |

104.    At all times that Lexis has done business with the agencies in Massachusetts under these and other contracts, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report.  As set forth below, Lexis has not abided by its obligations.  To the contrary, Lexis has repeatedly submitted false information to agencies in Massachusetts as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies.  Relator has alleged specific reverse false claims below.

105.   In addition, Lexis obtains a great many crash reports from state and local agencies in Massachusetts by courier and mail order.  These agencies include the Boston Police and the Massachusetts State Police.   Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intends to download the report and sell it many times more, thereby depriving these agencies of the revenue from repeat sales of the same report.

### New Jersey

106.   New Jersey has enacted a False Claims Act that protects the "State" from fraud. *See* N.J.S.A.  § 2A:32C-2 .  New Jersey defines "State" to mean "any of the principal departments in the executive branch of state government, and any division, board, bureau, office, commission or other instrumentality within or created by such department; and any independent state authority, commission, instrumentality or agency." *Id.*  This definition covers all state police agencies in New Jersey, such as the New Jersey State Police, but not local police agencies.

107.   Lexis obtains substantial numbers of reports from the New Jersey State Police, using two methods to do so.  First, Lexis holds a contract with the New Jersey Turnpike Authority ("NJTA") to collect and sell crash reports prepared by the New Jersey State Police for accidents that take place  on the New Jersey Turnpike or the Garden State Parkway.  Lexis acquired this contract by virtue of its acquisition of the Crash and Project Group of Appriss in 2016.

108.   On information and belief, the NJTA contract contains similar language to the statewide Appriss contracts in place in Florida, Georgia and Tennessee.  In particular, the NJTA

contract requires Lexis to forward an agency fee of $3.51 back to the New Jersey State Police for each and every sale of a crash report, while Lexis retains a convenience fee of $1.49.

109.   At all times that Lexis has done business with the NJTA, Lexis owed a contractual and legal responsibility to forward agency fees to the New Jersey State Police each and every time Lexis sold a crash report.  As set forth below, Lexis has not abided by its obligations.  To the contrary, Lexis has repeatedly submitted false information to the NJTA as to the number of crash reports sold and has underpaid its obligations with regard to repeat sales of the same crash reports.

110.   For accidents that take place on non-toll roads, the New Jersey State Police makes crash reports available by courier and mail order, charging $10.00 for each report.  Lexis acquires substantial numbers of crash reports in this fashion as well.  Relator has attached hereto a sample form required by the New Jersey State Police for ordering a crash report.  *See* Exhibit 33.  As set forth on the form, the requestor must indicate the name of the person or company on whose behalf the crash report is being requested.

111.   Lexis has submitted thousands of requests to the New Jersey State Police using this method.  In doing so, Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intends to download the report and sell it many times more, thereby depriving the New Jersey State Police of the revenue from repeat sales of the same report.

### New Mexico

112.   New Mexico has enacted a False Claims Act that protects both the "state" and its "political subdivisions."  *See* N.M.S.A. § 44-9-2(A).  New Mexico defines "State" to mean "the

State of New Mexico or any of its branches, agencies, departments, boards, commissions, officers, institutions or instrumentalities..." *Id.* The statute defines "political subdivision" as "a political subdivision of the state." *Id.* The New Mexico FCA thus covers all state and local police agencies in New Mexico.

113.   Lexis does substantial business in New Mexico. Lexis obtains crash reports in New Mexico by way of contracts with numerous state and local agencies. Relator brings this action on behalf of these municipalities as well, which include:

| | | | |
|---|---|---|---|
| New Mexico State Police | Carlsbad PD | Las Cruces PD | San Juan County Sheriff's Office |
| Alamogordo Dept. of Public Safety | Clovis PD | Mora County Sheriff | San Miguel County Sheriff's Office |
| | Colfax County Sheriff | Portales PD | |
| Albuquerque PD | Dona Ana County Sheriff's Department | Quay County Sheriff Office | Silver City PD |
| Artesia PD | Farmington PD | Raton PD | Springer PD |
| Aztec PD | Gallup PD | Ruidoso PD | Taos PD |
| Bloomfield PD | Hobbs PD | | |

114.   On information and belief, the New Mexico contract requires Lexis to forward an agency fee of $3.00 back to the New Mexico state or local agency for each and every sale of a crash report, while Lexis retains a convenience fee of $7.00.

115.   At all times that Lexis has done business with the state and local agencies in New Mexico under these and other contracts, Lexis owed a contractual and legal responsibility to forward agency fees each and every time Lexis sold a crash report. As set forth below, Lexis has not abided by its obligations. To the contrary, Lexis has repeatedly submitted false information to state and local agencies in New Mexico as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies.

116.   In addition, Lexis obtains a great many crash reports from state and local agencies in New Mexico by courier and mail order. Lexis routinely makes material misrepresentations and

45

omissions when purchasing these crash reports. That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report. In reality, Lexis intends to download the report and sell it many times more, thereby depriving these agencies of the revenue from repeat sales of the same report.

### North Carolina

117. North Carolina has enacted a False Claims Act that protects the "State" against fraud. *See* N.C.G.S.A. § 1-605. The North Carolina FCA therefore covers state police agencies, such as the North Carolina Highway Patrol, but not local police agencies.

118. Lexis does substantial business with state police agencies in North Carolina, including the North Carolina Highway Patrol. Lexis obtains these crash reports by courier and mail order. The North Carolina Division of Motor Vehicles makes these reports available to the public for a fee of $5. Relator has attached hereto a sample form required to order a report prepared by the North Carolina State Highway Patrol. *See* Exhibit 34.

119. As set forth on the form, the requestor must indicate the name of the person or company on whose behalf the crash report is being requested. Lexis has submitted thousands of requests to the North Carolina State Highway Patrol using this method. In doing so, Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports. That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report. In reality, Lexis intends to download the report and sell it many times more, thereby depriving the North Carolina State Highway Patrol of the revenue from repeat sales of the same report.

## Tennessee

120.   Tennessee has enacted a False Claims Act that protects both the "state" and its "political subdivisions."  *See* Tennessee Code § 4-18-102(1).   Tennessee defines "political subdivision" as "any city, town, municipality, county, including any county having a metropolitan form of government, or other legally authorized local governmental entity with jurisdictional boundaries." *Id.* at § 4-18-102(4).  This Tennessee FCA thus covers all state and local police agencies in the state.

121.   Lexis does substantial amounts of business in the state of Tennessee, where it obtains crash reports in two ways.  First, Lexis holds a statewide contract with the Tennessee Department of Safety and Homeland Security ("TDOSHS") to service the Tennessee Integrated Traffic Analysis Network, also known as "TITAN."  TITAN is a statewide electronic reporting system that provides law enforcement agencies in Tennessee with the ability to electronically collect, review, transmit and retrieve public safety reports.  Lexis acquired this contract by way of its 2016 acquisition of the Crash and Project Group of Appriss.

122.   The initial contract between TDOHSH and Appriss, dated in 2013, called for Appriss to be paid in excess of $5 million to implement the TITAN system.  *See* Exhibit 35. Although the contract called for Appriss to create a system for selling crash reports via the internet, the contract did not address the fees collected as a result of the sale of these online reports.

123.   In August 2013, TDOSHS amended the contract to address the online sale of crash reports, as well as other issues.  The amendment provided as follows:

C .3 .2 .2 Price Schedule

C .3 .2 .2 .1.  In consideration of products and services provided hereunder by the contractor, the contractor shall charge and collect a fee for each report sold. The appropriate fee for each report as specified below:

| Report Type | Report Price | Convenience Fee | Total Report Price |
|---|---|---|---|
| THP | $4.00 | $6.00 | $10.00 |
| Local Agency | $4.00 | $6.00 | $10.00 |

a. The convenience fee for THP and local agency reports will be used to calculate a credit back against each invoice submitted by the contractor to TDOSHS for services and maintenance charges as follows

    1. Prior to submitting an invoice to TDOSHS for payment related to services and maintenance provided, the contractor will calculate and include on the Titan contract invoice a credit amount equal to

        a. $5.00 per THP report sold
        b. $5.00 per Local Agency report sold.

    2. Each month the contractor must include a detailed report of all sales, agency and convenience fee amounts collected in any charges that reduced the amount of the convenience fee portion that is applied to the invoice credit.

*See* Exhibit 36. The contract unequivocally requires payment of agency fees (and calculation of a credit) for "each report sold."

124. As with its other statewide contracts, Appriss used the website www.buycrash.com to sell Tennessee crash reports. Lexis continued to use that website following its Appriss-related acquisition.

125. Many municipalities throughout Tennessee rely upon TITAN and Appriss/Lexis to sell their crash reports by way of www.buycrash.com. Relator brings this action on behalf of the these municipalities as well, which include the following:

| | | | |
|---|---|---|---|
| Adamsville PD | Anderson County | Athens PD | Baneberry PD |
| Alamo PD | Sheriff's Department | Atoka PD | Bartlett PD |
| Alcoa PD | Ardmore PD | Austin Peay State | Baxter PD |
| Alexandria PD | Arnold AFB PD | University | Bean Station PD |
| Algood PD | Ashland City PD | Baileyton PD | |

48

Bedford County Sheriff's Department
Belle Meade PD
Bells PD
Benton County Sheriff's Department
Benton PD
Berry Hill PD
Bethel Springs PD
Bicentennial Capital Mall State Park
Big Sandy PD
Blaine PD
Bledsoe County Sheriff's Department
Blount County Sheriff's Department
Bluff City PD
Bolivar PD
Bradford PD
Bradley County Sheriff's Department
Brentwood PD
Brighton PD
Bristol PD
Brownsville PD
Bruceton PD
Burns PD
Calhoun PD
Camden PD
Campbell County Sheriff's Department
Cannon County Sheriff's Department
Carroll County Sheriff's Department
Carter County Sheriff's Department
Carthage PD
Caryville PD
Celina PD
Centerville PD
Chapel Hill PD
Charleston PD
Chattanooga PD

Chattanooga State PD
Cheatham County Sheriff's Department
Chester County Sheriff's Department
Church Hill Public Safety
City of Dickson Park Ranger Division
Claiborne County Sheriff's Office
Clarksburg PD
Clarksville Park Rangers
Clarksville PD
Clay County Sheriff's Office
Cleveland PD
Cleveland State Community College
Clifton PD
Clinton PD
Cocke County Sheriff's Department
Coffee County Sheriff's Department
Collegedale PD
Collierville PD
Collinwood PD
Columbia PD
Cookeville PD
Coopertown PD
Copperhill PD
Cornersville PD
Covington PD
Cowan PD
Crockett County Sheriff's Department
Cross Plains PD
Crossville PD
Crump PD
Cumberland City PD
Cumberland County Sheriff's Department
Cumberland Gap PD

Dandridge PD
David Crockett State Park
Davidson County Sheriff's Department
Dayton Pd
Decatur County Sheriff's Department
Decatur PD
Decaturville PD
Decherd PD
Dekalb County Sheriff's Department
Dickson County Sheriff's Office
Dickson PD
Dover PD
Dresden Pd
Dunlap PD
Dyer County Sheriff's Office
Dyer PD
Dyersburg PD
Eagleville PD
East Ridge PD
Elizabethton PD
Elkton PD
Englewood PD
Erin PD
Erlanger Medical Center PD
Erwin PD
Estill Springs PD
Ethridge PD
Etowah PD
ETSU Department of Public Safety
Fairfield Glade Security Department
Fairview PD
Fall Creek Falls State Park
Fayette County Sheriff's Office
Fayetteville PD

Fentress County Sheriff's Department
Franklin County Sheriff's Department
Franklin PD
Friendship PD
Gadsden PD
Gainesboro PD
Gallatin PD
Gallaway PD
Gates PD
Gatlinburg PD
Germantown PD
Gibson County Sheriff's Department
Gibson PD
Giles County Sheriff's Department
Gleason PD
Goodlettsville PD
Gordonsville PD
Grainger County Sheriff's Department
Grand Junction PD
Graysville PD
Greenbrier PD
Greene County Sheriff's Department
Greeneville PD
Greenfield PD
Grundy County Sheriff's Office
Halls PD
Hamblen County Sheriff's Department
Hamilton County Sheriff's Office
Hancock County Sheriff's Department
Hardeman County Sheriff's Department
Hardin County Sheriff's Department
Harriman PD

49

Harrison Bay State Park
Hartsville-Trousdale Sheriff's Department
Hawkins County Sheriff's Department
Haywood County Sheriff's Department
Henderson County Sheriff's Department
Henderson PD
Hendersonville PD
Henning PD
Henry County Sheriff's Department
Henry Horton State Park
Henry PD
Hickman County Sheriff's Department
Hickory Valley PD
Hohenwald PD
Hollow Rock PD
Hornbeak PD
Hornsby PD
Houston County Sheriff's Department
Humboldt PD
Humphreys County Sheriff's Department
Huntingdon PD
Huntland PD
Jacksboro PD
Jackson County Sheriff's Department
Jackson PD
Jamestown PD
Jasper PD
Jefferson City PD
Jefferson County Sheriff's Department
Jellico PD
Johnson City PD
Johnson County Sheriff's Department

Jonesborough PD
Kenton PD
Kimball PD
Kingsport PD
Kingston PD
Kingston Springs PD
Knox County Sheriff's Office
Knoxville Airport PD
Knoxville PD
Lafayette PD
Lafollette PD
Lagrange PD
Lake County Sheriff's Office
Lake Tansi Security
Lakewood PD
Lauderdale County Sheriff's Department
Lavergne PD
Lawrence PD
Lawrence County Sheriff's Department
Lawrenceburg PD
Lebanon PD
Lenoir City PD
Lewis County Sheriff's Department
Lewisburg PD
Lexington PD
Lincoln County Sheriff's Department
Lincoln Memorial University Police
Livingston PD
Lookout Mountain PD
Loretto PD
Loudon County Sheriff's Department
Loudon PD
Lynnville Pd
Macon County Sheriff's Office

Madison County Sheriff's Department
Madisonville PD
Manchester PD
Marion County Sheriff's Department
Marshall County Sheriff's Department
Martin PD
Maryville PD
Mason PD
Maury City PD
Maury County Sheriff's Department
Maynardville PD
McEwen PD
McKenzie PD
McMinn County Sheriff's department
McMinnville PD
McNairy Country Sheriff's Department
Medina PD
Meeman-Shelby State Park
Meigs County Sheriff's Department
Memphis International Airport Police
Memphis PD
Metro Knoxville Airport Authority PD
Metro Parks Ranger Office
Metropolitan Nashville PD
Middle Tennessee State University
Middleton PD
Millington PD
Minor Hill PD
Monroe County Sheriff's Department
Monteagle PD

Monterey PD
Montgomery County Sheriff's Department
Montgomery County Highway Department
Moore County Sheriff's Department
Morgan County Sheriff's Department
Morristown Pd
Moscow PD
Mount Carmel PD
Mount Juliet PD
Mount Pleasant PD
Mountain City PD
Munford PD
Murfreesboro PD
Nashville Airport Police
Nashville MPO
New Hope PD
New Johnsonville PD
New Market PD
Net Tazewell PD
Newbern PD
Newport PD
Niota PD
Nolensville PD
Norris PD
Northeast State Police and Safety
Oak Ridge PD
Oakland PD
Obion County Sheriff's Department
Obion PD
Oliver Springs PD
Oneida PD
Overton County Sheriff's Department
Overton PD
Palmer PD
Paris PD
Parsons PD

Pellissippi State Community College
Perry County Sheriff's Department
Petersburg PD
Pickett County Sheriff's Department
Pigeon Forge PD
Pikeville PD
Piperton PD
Pittman Center PD
Pleasant View PD
Polk County Sheriff's Department
Portland PD
Pulaski PD
Puryear PD
Putnam County Sheriff's Office
Ramer PD
Red Bank PD
Red Boiling Springs PD
Rhea County Sheriff's Department
Ridgely PD
Ridgetop PD
Ripley PD
Roan Mountain State Park
Roane County Sheriff's Department
Robertson County Sheriff's Department
Rockwood PD
Rockytop PD
Rogersville PD
Rossville PD
Rutherford County Sheriff's Department
Rutherford PD
Rutledge PD
Saltillo PD
Samburg PD
Savannah PD

Scott County Sheriff's Department
Scotts Hill PD
Selmer PD
Sequatchie County Sheriff's Department
Sevier County Sheriff's Department
Sevierville PD
Sewanee PD
Sharon PD
Shelby County PD
Shelby County Sheriff's Department
Shelbyville PD
Signal Mountain PD
Smith County Sheriff's Department
Smithville PD
Smyrna PD
Sneedville PD
Soddy Daisy PD
Somerville PD
South Carthage PD
South Fulton PD
South Pittsburg PD
Sparta PD
Spencer PD
Spring City PD
Spring Hill PD
Springfield PD
St. Joseph PD
Stewart County Sheriff's Department
Sullivan County Sheriff's Department
Sumner County Sheriff's Office
Sunbright PD
Surgoinsville PD
Sweetwater PD
TABC-Knoxville
Tazewell PD
TDOT Headquarters

TDOT Region 1 Knoxville
TDOT Region 2 Chattanooga
TDOT Region 3
TDOT Region 4 Jackson
Tellico Plains PD
Tennessee State University
THP-CID
THP District 1 – Knoxville
THP District 2 – Chattanooga
THP District 3 - Nashville
THP District 4 – Memphis
THP District 5 – Fall Branch
THP District 6 – Cookeville
THP District 7 – Lawrenceburg
THP District 8 – Jackson
THP District 9 – Administrative
Tipton County Sheriff's Department
Tiptonville PD
Toone PD
Townsend PD
Tracy City PD
Trenton PD
Trezevant PD
Trimble PD
Troy PD
Tullahoma PD
Tusculum PD
Unicoi County Sheriff's Department
Union City PD

Union County Sheriff's Department
University of Memphis Police Services
University of Tennessee Chattanooga Police
University of Tennessee Knoxville Police
University of Tennessee Memphis Police
University of Tennessee Knoxville Medical Center PD
UT Martin Department of Public Safety
Van Buren County Sheriff's Department
Vanderbilt University Police
Volunteer State Community College
Vonore PD
Walters State Campus Police
Warren County Sheriff's Department
Warriors' Path State Park
Wartburg PD
Wartrace PD
Washington County Sheriff's Department
Watauga PD
Watertown PD
Waverly PD
Wayne County Sheriff's Department
Waynesboro PD
Weakley County Sheriff's Department

51

| Westmoreland PD | White Pine PD | Wilson County | Yorkville PD |
| White Bluff PD | Whiteville PD | Sheriff's Department | |
| White County | Whitwell PD | Winchester PD | |
| Sheriff's Department | Williamson County | Winfield PD | |
| White House PD | Sheriff's Department | Woodbury PD | |

126.    In addition to the statewide contract, Lexis also holds individual contracts with several Tennessee police agencies to sell crash reports outside of the statewide contract. These include a contract with the City of Memphis, attached hereto as Exhibit 37.

127.    This contract provides as follows, in relevant part:

| Agency | Terms |
| --- | --- |
| City of Memphis (Exhibit 37) | Contract began in or around 2013<br><br>Contract inherited from iyeTek<br><br>Relevant terms:<br><br>"The parties agree as follows:<br>a. There will be no cost or fee to city to implement the defined services.<br>b. Fee payable from LEXIS-NEXIS to city: $15.00/report delivered to requesting party (excluding electronic versions of crash reports provided free of charge to a requesting agency)" (p.3) |

128.    At all times that Lexis has done business with police agencies in Tennessee under these and other contracts, Lexis owed a contractual and legal responsibility to accurately report sales to the agencies and forward the correct amount of agency fees for each and every crash report sale. As further described below, Lexis has not abided by these obligations. To the contrary, Lexis has repeatedly submitted false information to Tennessee agencies as to the number of crash reports sold, and Lexis has underpaid its obligations to these agencies. Relator has alleged specific reverse false claims below.

129.    In addition, Lexis obtains a great many crash reports from state and local agencies in Tennessee by courier and mail order.  Lexis routinely makes material misrepresentations and omissions when purchasing these crash reports.  That is to say, Lexis and/or its courier routinely identify a single client on whose behalf it was purportedly requesting the crash report.  In reality, Lexis intends to download the report and sell it many times more, thereby depriving these agencies of the revenue from repeat sales of the same report.

### Federal Police Agencies

130.    Lexis also acquires crash reports from many federal police agencies around the country.  These include the National Park Police and the Military Police units of dozens of United States military bases around the country.   Lexis does not have direct contracts with federal agencies to acquire and sell these crash reports.  Instead, Lexis obtains these crash reports by way request under federal law.

131.    By way of example, Relator has attached hereto, as Exhibit 38, a spreadsheet showing dozens of crash report orders made by Lexis to the National Park Police in 2017.  Lexis makes hundreds of similar requests each year to federal military police agencies.

132.    Like other police agencies, federal police agencies charge a fee for crash reports.  Likewise, federal police agencies require the purchaser of crash reports to identify themselves and/or the person or company on whose behalf they are purchasing the report.

133.    Each year, Lexis obtains hundreds of crash reports from federal police agencies by making material misrepresentations and omissions in FOIA requests.  In particular, Lexis and/or its courier identifies a single client on whose behalf it is purportedly requesting the crash report.   In

reality, Lexis intends to download the report and sell it many times more, thereby depriving federal police agencies of revenue from repeat sales of the same reports.

### HOW LEXIS SELLS CRASH REPORTS & DEFRAUDS POLICE AGENCIES
#### Lexis Sells Crash Reports Through Numerous Internet Portals

134.    Lexis maintains various websites for the sale of crash reports to the public, including www.buycrash.com.  Any member of the public can access this website and order crash reports from Lexis.  Depending on the laws of the state that produced the crash report, the buyer may have to certify the reasons he or she is purchasing the report.  The buyer pays for the report, usually by credit card.  The cost of the report, typically $10 - $20, includes both the agency fee and the handling fee.  As previously described, Lexis is supposed to forward the agency fee, typically $5 - $10, to the agency that produced the report.

135.    In addition to publicly available websites, Lexis operates dozens of other portals that cater to institutional buyers such as insurance companies, law firms, private investigators and the like.  Customers usually subscribe to these services and pay a monthly subscription fee for the service.  These portals include, but are not limited to, the following:

LexisNexis OrderPoint;

LexisNexis Accurint for Legal Professionals;

LexisNexis Automobile Accident Reports;

Accurint;

Accurint for Insurance;

Accurint for Insurance Plus;

Accurint for Law Enforcement;

Accurint XML;

Accurint XML (Reseller);

Desk Officer Reporting System;

Claims Compass;

Lexis.com;

Lexis Advance; and

Lexis PoliceReports.

136.    Lexis designs these applications for particular market segments.  As an example, Lexis offers "LexisNexis Accurint for Legal Professionals" to lawyers on a subscription basis. This application allows lawyers to access vast amounts of data for witness background searches, asset searches, and public records searches, including searches of auto crash reports.

137.    Insurance companies are the biggest buyers of auto crash reports from Lexis. As an example, State Farm commands 18% of the nationwide automobile insurance market.  According to Relator, in 2016, Lexis sold over one million crash reports to State Farm alone.  Lexis also has a contract with Allstate, whereby Allstate agrees to order all of its auto crash reports through the Lexis OrderPoint portal.

138.    On a daily basis, Lexis produces a nationwide summary of daily auto crash report sales known as the eCrash Daily Management Report of "eCrash Daily Summary."  This spreadsheet purports to shows all sales made on a daily basis across the country.   These daily spreadsheets contain columns for the following categories of information, among others:

Date of Order;

Report Number;

Agency Name;

Company Name (Buyer);

Report Fee (Agency Fee); and

Convenience Fee.

139.     As to the buyer's name, the eCrash Daily Summary follows a different methodology when a buyer purchases a crash report through one of the monthly subscription services such as OrderPoint or Accurint.  In such cases, the eCrash Daily Summary identifies the buyer as "LN CRU Police Records," which stands for "LexisNexis Crash Reporting Unit Police Records."  This means the purchase has been made on behalf of a monthly commercial customer. The name of the ultimate buyer of the report is then maintained by the LN CRU department within Lexis.

### Lexis Maintains an Ever-Expanding "Inventory" of Crash Reports

140.     When a Lexis customer orders a given crash report for the first time, Lexis obtains the report by way of one of its contractual relationships or in the old fashioned way, by courier. Either way, Lexis delivers the report to the customer and charges a fee, which consists of the agency fee and the handling fee.  These "first" purchases typically appear on the eCrash Daily Summary, and Lexis typically reports these first purchases and forwards the appropriate agency fee to the police agency that produced the report.

141.     Accordingly, on a regular basis, Lexis routinely reports *some* sales and sends *some* amount of money to the police agencies with whom the company does business.  On the surface, these agencies have no reason to suspect that the number of sales reported or the amounts of money delivered are wrong or inaccurate.

142.    In reality, however, the sales reflected on the eCrash Daily Summary and reported to the agencies constitute only a fraction of the total sales made by Lexis.   This is because, once Lexis obtains and sells a given crash report, Lexis uploads that report into a vast, ever-expanding database of crash reports known as the High Performance Computer Cluster or "HPCC."   This database serves as an internal inventory for future sales.  Once a given crash report has been added to the inventory, Lexis treats that report as Lexis property, which can be freely re-sold to customers in the future.

143.    An internal Lexis PowerPoint explains the process by which Lexis adds to the ever-expanding HPCC database:

> Data
>
> *Comes from state and local police agencies.
>
> *Accident reports generated at scene of accident and, on occasion, the motor vehicle departments of a state.
>
> *Data sent to High Performance Cluster Computer (HPCC) which is where we house our products to hit.
>
> *[Lexis] receives this data when an insurance claim/inquiry is made and there is a request for an accident report.

Every time a customer orders a new crash report, through any Lexis portal, the database grows.

### Lexis Does Not Pay Agency Fees on "Repeat" Sales Out of Inventory

144.    Once a given crash report has been uploaded into the HPCC, Lexis treats that report as Lexis property, available for re-sale without the need to forward agency fees to the police agency that produced the report.   When Lexis receives a new crash report order, through any portal, Lexis first searches its own internal HPCC database to determine whether it already has the report in inventory.  If Lexis already has the report, Lexis simply sells the report out of inventory,

without paying agency fees.   If Lexis does not have the report in inventory, only then will it go to

the state, local or federal agency to obtain the report (and pay agency fees).

145.   Another Lexis PowerPoint explains:

**What we do:**

Before submitting a police record request to any agency, we check to see
if we have the report available in-house.

**Key Benefits:**

1.   Immediate access to over **53 million** current & historical records;
     **adding approximately 690,000 accidents per month.**
2.   ~**6,000** agencies through eCrash that represent ~**33%** of all police
     agencies.
3.    **50%** of the top **200 agencies** by volume
4.   ~**30%** interactive and **38%** overall through eCrash
5.   Average TAT through eCrash (average of **2.3** days).

146.   Most importantly, when Lexis sells a crash report out of its own internal HPCC

inventory, Lexis <u>still</u> collects the agency fee from customers, but Lexis <u>does not</u> forward that fee to

the state or local agency that produced the report.  Instead, Lexis keeps the agency fee as "profit."

Lexis boasted of this practice in another one of its internal PowerPoint presentations regarding the

ASQ or "Automated Search Queue" system, which is the process by which Lexis searches its own

HPCC inventory:

ASQ

*Acronym for Auto Search Queue

. . .

*Similar to DHDB in nature in that when a police record request comes in,
ASQ is searched and if the order is found, the customer gets the report
back faster, <u>and we don't incur the agency fee.</u>

> *The customer still gets charged the full rate (handling fee + agency fee) and it is <u>100% profit for us.</u>
>
> *$2.2 mm in annual revenue.

147.     This PowerPoint is an admission to fraud.  By contract and law, Lexis must collect the agency fee every time it sells a crash report, and it must forward the agency fee to the appropriate police agency every time it collects such a fee.  This PowerPoint admits that Lexis does not follow its obligation but instead keeps the agency fees as profits on repeat sales.  Lexis is currently cheating thousands of police departments around the country on a daily basis, and these agencies have no idea they are being defrauded.

148.     On information and belief, the fraud is particularly egregious as to purchases made by large insurance companies like State Farm, Allstate and GEICO, which buy millions of crash reports per year.  Many of these purchases take place with no human interface in "system to system" transactions without payment of agency fees.

149.     Lexis also purchases crash reports in order to re-purposes the information in each crash report and sells it in a variety of other ways.  As but one example, Lexis sells the vehicle identification number or "VIN" numbers from crash reports to Experian, a company that assembles and sells vehicle history reports.  VIN numbers are extremely profitable to Lexis, regardless of whether any customer ever orders the crash report.

150.     The sale of VIN numbers and other data from crash reports is expressly prohibited by many of the contracts in place between Lexis and police agencies, including the following:

> Crash records and/or other driver or vehicle owner information provided to the Contractor by the Department for purposes of this Contract <u>shall not be used by the Contractor for any purpose not approved in writing by the Department.</u>  The Contractor shall not sell, assign or otherwise transfer, or permit the use of information furnished by the Department to, or by, any other person, firm, association, or corporation unless (i) approved in

writing by the Department; and (ii) the use made by the transferee is consistent with the uses permitted by law including the disclosures prohibited by Section 119.07, Florida Statutes.

*See* Exhibit 7, at ¶ 3.12 (Florida DHSMV Contract).  This is yet another way that Lexis defrauds state and local agencies.

## SPECIFIC REVERSE FALSE CLAIMS

151.   As representative examples, Relator has confirmed that the following crash report purchases were made, and that Lexis did not forward the appropriate agency fees back to the state or local agency that produced the crash report.  In other words, Lexis cheated state and local agencies with respect to the following representative auto crash report purchases

152.   Lexis committed the following reverse false claims violations as to the State of Florida:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 3/31/17 | Florida Highway Patrol Troop A | Downs | 10/31/17 | $16 |
| 9/26/16 | Florida Highway Patrol Troop C | Brown | 11/28/17 | $16 |
| 8/27/16 | Florida Highway Patrol Troop C | Woodward | 11/28/17 | $16 |
| 9/14/16 | Florida Highway Patrol Troop K | Berkowitz | 11/28/17 | $16 |

153.   Lexis committed the following reverse false claims violations as to Miami-Dade County, Florida:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 3/5/17 | Miami-Dade PD | McRae | 11/5/17 | $16 |

| 3/6/17 | Miami-Dade PD | Valdez | 11/5/17 | $16 |
| 3/31/17 | Miami–Dade PD | Shema | 11/1/17 | $16 |

154.    Lexis committed the following reverse false claims violations as to the State of Georgia:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 2/25/10 | GA Forestry Commission | Moore | 11/3/17 | $11 |
| 7/2/10 | GA Forestry Commission | Ploof | 11/3/17 | $11 |
| 10/5/16 | Georgia State Patrol Post 00 | Hernandez | 11/2/17 | $11 |

155.    Lexis committed the following reverse false claims violations as to the State of New York:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 4/4/17 | Suffolk County PD | Rizza | 11/5/17 | $20 |
| 4/4/17 | Suffolk County PD | Burdanaro | 11/5/17 | $20 |
| 4/4/17 | Suffolk County PD | Reitz | 11/5/17 | $20 |

156.    Lexis committed the following reverse false claims violations as to the State of California:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 5/1/12 | Cal State, Fullerton PD | Mjolsnes | 11/3/17 | $18 |
| 5/2/12 | Cal State, Fullerton PD | Michalopoulos | 11/3/17 | $18 |
| 5/4/12 | Cal State, Fullerton PD | Conroy | 11/2/17 | $18 |

157.    Lexis committed the following reverse false claims violations as to the State of Indiana:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 12/13/10 | Indiana State Police Terre Haute 32 | Lewis | 11/1/17 | $12 |
| 2/01/12 | Indiana State Police Terre Haute 32 | Welch | 12/29/17 | $12 |
| 6/5/11 | Indiana State Police Terre Haute 32 | Orman | 12/29/17 | $12 |

158.    Lexis committed the following reverse false claims violations as to the State of Maryland, City of Baltimore:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 12/13/17 | Baltimore PD | Crone | 12/27/17 | $14 |
| 12/13/17 | Baltimore PD | Ausin | 12/27/17 | $14 |
| 12/13/17 | Baltimore PD | Clendaniel | 12/27/17 | $14 |

159.    Lexis committed the following reverse false claims violations as to the Commonwealth of Massachusetts:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 12/17/17 | Brockton PD | Lomba | 12/27/17 | $10 |
| 12/18/17 | Brockton PD | Mendes | 12/27/17 | $10 |
| 12/17/17 | Brockton PD | Lebrun | 12/27/17 | $10 |

160.    Lexis committed the following reverse false claims violations as to the State of Tennessee:

| Date of Crash | Agency | Involved Party | Date Report Ordered | Report Fee |
|---|---|---|---|---|
| 1/28/15 | Tenn. State Univ. PD | Smith | 11/1/17 | $10 |
| 2/28/17 | Tenn. State Univ. | Unk. | 11/3/17 | $10 |

| | PD | | | |
|------|-----------------------|-------|---------|------|
| 3/7/17 | Tenn. State Univ. PD | Reese | 11/3/17 | $10 |

161. The above reverse false claims are representative only. From at least January 2012 and continuing to the present, Lexis submitted thousands of false statements to federal, state and local police agencies, misrepresenting the number of crash reports it sold. Likewise, from at least January 2012 and continuing to the present, knowingly and intentionally avoided, decreased, and underpaid its financial obligations to thousands of federal, state and local police agencies.

## FEDERAL GRANT FRAUD

162. Lexis has also caused millions in fraud upon federal grant programs administered through the National Highway Traffic Safety Administration ("NHTSA").

### NHTSA Grant Funding

163. Each year, the federal government awards millions of dollars in grants to promote highway traffic safety, pursuant to a statutory scheme outlined in 23 U.S.C. §§ 405 and 408. Under Section 405(c) of this statute, a portion of these grants must go to the improvement of "Traffic Safety Information Systems":

**(c) State Traffic Safety Information System Improvements.—**

**(1) General authority.**—Subject to the requirements under this subsection, the Secretary of Transportation shall award grants to States to support the development and implementation of effective State programs that—

(A) improve the timeliness, accuracy, completeness, uniformity, integration, and accessibility of the State safety data that is needed to identify priorities for Federal, State, and local highway and traffic safety programs;

63

(B) evaluate the effectiveness of efforts to make such improvements;

(C) link the State data systems, including traffic records, with other data systems within the State, such as systems that contain medical, roadway, and economic data;

(D) improve the compatibility and interoperability of the data systems of the State with national data systems and data systems of other States; and

(E) enhance the ability of the Secretary to observe and analyze national trends in crash occurrences, rates, outcomes, and circumstances.

*See* 23 U.S.C. § 405(c).   By Congressional mandate, NHTSA administers these grants to the States and publishes an annual report that identifies the amounts awarded to each State.

164.   Individual States receive and distribute the grant funding pursuant to a scheme outlined in 23 C.F.R. § 1200.22, which provides:

> **(a)** *Purpose.* This section establishes criteria, in accordance with 23 U.S.C. 405(c), for grants to States to develop and implement effective programs that improve the timeliness, accuracy, completeness, uniformity, integration, and accessibility of State safety data needed to identify priorities for Federal, State, and local highway and traffic safety programs, evaluate the effectiveness of such efforts, link State data systems, including traffic records and systems that contain medical, roadway, and economic data, improve the compatibility and interoperability of State data systems with national data systems and the data systems of other States, and enhance the agency's ability to observe and analyze national trends in crash occurrences, rates, outcomes, and circumstances.

165.   In order to become eligible for grant funding, each State must establish a Traffic Records Coordinating Committee or "TRCC." *See* 23 CFR § 1200.22(b).   The TRCC must meet at scheduled intervals and draft a Strategic Plan for its traffic safety information systems. *Id.* at § 1200.22(c).   The plan must describe "specific, quantifiable and measurable improvements anticipated in the State's core safety databases, including crash… databases." *Id.*

64

166.   Most importantly, each State TRCC has the power to evaluate and award grant proposals for federal money allotted to the State by NHTSA.  The TRCC's must use this grant funding to promote improvements to traffic records information systems:

> **(h)** *Use of grant funds.* Grant funds awarded under this section shall be used to make quantifiable, measureable progress improvements in the accuracy, completeness, timeliness, uniformity, accessibility or integration of data in a core highway safety database.

*See* 23 C.F.R. § 1200.22(h).

167.   Nationwide, TRCC's review thousands of grant requests each year to improve traffic records information systems.  Many of these requests come from state and local police agencies who wish to use federal grant money to convert their police departments from old fashioned, paper crash reporting to electronic crash reporting systems.  Federal grant money can be used to buy computers, scanners and other hardware and software that can be installed in police cars in order to generate electronic crash reports.  Electronic crash reporting furthers the purposes of Section 405 and Section 408 because it helps States to create more efficient traffic crash databases.

168.   Federal grant funding has been a bonanza for companies such as Lexis and its competitors, who wish to earn profits from selling electronic crash reports.  Using federal grant money, state or local police agencies can buy all the equipment and software necessary to implement a vendor's electronic crash reporting system.  Indeed, companies such as Lexis and iyeTek actively assisted hundreds of local police agencies to write grant proposals to TRCC's around the country in order to secure Section 405 funding to implement their own crash reporting systems.

65

### Federal Grants Helped to Fund the Lexis Fraud

169. Nationwide, many state and local police agencies have applied for and received federal grant funding to implement or expand the Lexis eCrash system for electronic crash reporting. Indeed, the Florida TRCC has awarded over $900,000 to Miami-Dade County alone to implement and expand the Lexis eCrash system used by the Miami-Dade Police Department. By applying for and receiving these grants, Miami-Dade County unwittingly used federal funds to finance and further a fraud upon the County itself.

170. As previously described, Miami-Dade County entered into a contract with iyeTek in March 2012 for implementation of an electronic crash reporting system. By the time Miami-Dade County signed this contract, iyeTek had already begun its "strategic relationship" with Lexis, promoted as the "eCrash Solution," whereby Lexis would be responsible for selling all of Miami-Dade's crash reports. Although Miami-Dade signed the contract in 2012, the eCrash system would not be fully implemented until 2013, as it would cost hundreds of thousands of dollars to implement the system.

171. In order to implement the Lexis eCrash system, the Miami-Dade Police Department turned to the Florida TRCC for federal funding. Miami-Dade applied for federal funding in two tranches.

172. First, in early 2012, Miami-Dade applied for a federal grant for the "Miami-Dade PD eCrash Equipment Project." *See* Exhibit 39 (2012 Miami-Dade Grant Request). Miami-Dade requested $541,600. The 2012 grant application, provides as follows, in relevant part:

> The Miami-Dade Police Department (MDPD) will implement an electronic crash system where none previously existed. This grant will help the department implement the solution. (p. 2)

...

The eCrash system will allow police officers and public service aides to complete traffic crash report documents electronically as required by the state, independent of the need for an Internet connection. The automated system will include a repository of all documents, including internal documents that can only be accessed by MDPD authorized parties and public records that are made available to the public in accordance with Florida statutes. (p.3)

...

Note: The client application is provided at no cost to the Miami-Dade Police Department (p. 6)

*See Id.*

173.    The 2012 Miami-Dade grant application did not disclose, nor did Miami-Dade realize at the time, that the Lexis eCrash system would be used to cheat Miami-Dade County out of revenue on repeat sales of crash reports. Moreover, Miami-Dade's representation that the eCrash vendor had provided the application at "no cost" to the County was false. Unbeknownst to Miami-Dade County, the Lexis eCrash application carried a very substantial cost, namely, the cost of diverted agency fees on all repeat sales of crash reports. This misrepresentation was not the fault of Miami-Dade County, who was a victim to the fraud rather than a perpetrator of it.

174.    Had Miami-Dade realized the Lexis system would be used to defraud the County's taxpayers, the County would not have applied for these grant funds, but rather, would have explored other avenues for electronic crash reporting. Likewise, had the Florida TRCC known the truth about the Lexis eCrash system, the TRCC would never have authorized funds to implement that system. Instead, the TRCC would have allotted these federal funds to other deserving police agencies across Florida who had requested funds to implement electronic crash reporting systems that would not cheat taxpayers.

175.    Nevertheless, the Florida TRCC, unaware of the truth about the Lexis eCrash system, approved Miami-Dade County's request.  In or around 2012, the Florida TRCC awarded a grant of federal funds in the amount of $426,000 to the Miami-Dade Police Department in order to implement the Lexis eCrash system.

176.    By March 2013, Miami-Dade realized that the initial funds requested would not be sufficient for full implementation.  In or around March 2013, therefore, the Miami-Dade Police Department submitted another grant application to the Florida TRCC, again titled "eCrash Equipment Project."  *See* Exhibit 40.    This time, Miami-Dade requested $485,482.    The 2013 grant application, provides as follows, in relevant part:

> The Miami-Dade Police Department requires support to continue to implement the eCrash Equipment Project to allow for the continued rollout of the eCrash system. (p. 2)
>
> …
>
> Miami-Dade Police Department is implementing an electronic crash (eCrash) system where none previously existed. This grant will help the department implement this technology solution.  (p.3)
>
> …
>
> The eCrash system will allow police officers and sergeants, and public service aides to complete traffic crash report documents electronically, submit them to the workflow for proper approval process, and ultimately make them available to the public as required by the state … (p.3)
>
> …
>
> The automated system will include a repository of all documents, including internal documents that can only be accessed by Miami-Dade Police Department authorized parties, and public records that are made available to the public in accordance with Florida statutes. (p. 3)
>
> …

> Note: the vendor application for the eCrash system is provided at no cost
> to the Miami-Dade Police Department. (p. 3)

*See Id.*

177.    Once again, the 2013 Miami-Dade grant application did not disclose, nor did Miami-Dade realize, that the Lexis eCrash system would be used to cheat Miami-Dade County out of revenue on repeat sales of the crash reports. In fact, by March 2013 the system had been partially implemented and Lexis was already defrauding Miami-Dade County on crash report sales. Moreover, Miami-Dade's representation that the eCrash vendor had provided the application at "no cost" to the County was false. Unbeknownst to Miami-Dade County, the Lexis eCrash application carried a very substantial cost, namely, the cost of diverted agency fees on all repeat sales of crash reports. This misrepresentation was not the fault of Miami-Dade County, who was a victim to the fraud rather than a perpetrator of it.

178.    Had Miami-Dade realized that Lexis was actively defrauding the County's taxpayers, the County would not have applied for these additional grant funds, but rather, would have explored other avenues for electronic crash reporting. Likewise, had the Florida TRCC known the truth about the Lexis eCrash system and the ongoing fraud, the TRCC would never have authorized funds to expand that system. Rather, it would have allotted these federal funds to other deserving agencies across Florida who had also requested funds to implement electronic crash reporting systems that would not cheat taxpayers.

179.    Nevertheless, the Florida TRCC, unaware of the truth about the Lexis eCrash system, approved Miami-Dade County's additional request. In or around 2013, the Florida TRCC awarded a second grant of federal funds in the amount of $485,482 to Miami-Dade County in order to expand the Lexis eCrash system.

180.    By applying for and receiving these grants, Miami-Dade County unwittingly used federal funds to finance and further a fraud upon the County.  If Miami-Dade County had known the truth about Lexis's ongoing fraud against the County, the County would never have sought federal funding to implement or expand the Lexis eCrash system.  Likewise, the Florida TRCC would never have awarded federal funding to Miami-Dade County had it known the funds would be used to implement and expand a system that defrauds the County and its taxpayers.

181.    Lexis's ongoing fraud was material to both Miami-Dade County's decision to apply for these grants, and the Florida TRCC's decision to award the grants.  Lexis therefore caused Miami-Dade County, and other state and local agencies, to submit false claims upon federal grant funds within the meaning of the False Claims Act.

## ATTORNEYS' FEES AND CONDITIONS PRECEDENT

182.    The fraudulent schemes outlined above have caused the government millions of dollars in false claims and reverse false claims damages.

183.    The Relator has hired the undersigned counsel and is obligated to pay a reasonable attorneys' fee.

184.    All conditions precedent have been performed or waived.

185.    The allegations and transactions described in this Complaint have not been publicly disclosed within the meaning of the FCA.  To the extent a public disclosure has taken place, Relator is the original source of the information in this Complaint.  That is to say, he fully disclosed these allegations to the government before any public disclosure took place and he has knowledge that is independent of and materially adds to any publicly disclosed information.

## Count 1 – Federal FCA Claim

186.    Relator re-alleges paragraphs 1 through 185.

187.    This a claim for treble damages under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

188.    Through the acts described above, Defendant and its agents and employees knowingly caused to be presented to the Government false or fraudulent claims for federal grant funds in violation of 31 U.S.C. §§ 3729(a)(1)(A).

189.    The Government, unaware of the falsity of the claims made or caused to be made by the Defendant, approved, paid, and participated in payments made by the Government's fiscal intermediaries for claims that otherwise would not have been allowed.

190.    In addition, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the government, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the Government in violation of 31 U.S.C. §§ 3729(a)(1)(G).

191.    By reason of these payments and approvals, the Government has been damaged and continues to be damaged, in an amount yet to be determined.

## Count 2 – Florida FCA Claim

192.    Relator re-alleges paragraphs 1 through 185.

193.    This a claim for treble damages under the Florida False Claims Act, section 68.082(2)(g), Florida Statutes.

194.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money

71

or property to the government, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the Government, in violation of section 68.082(2)(g), Florida Statutes.

195.    By reason of this conduct, the State of Florida has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 3 – Miami-Dade FCA Claim**

196.    Relator re-alleges paragraphs 1 through 185.

197.    This a claim for treble damages under the Miami-Dade False Claims Ordinance, § 21-255, *et seq.*, Miami-Dade County Code of Ordinances.

198.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the government, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the Government, in violation of § 21-258(1)(G), Miami-Dade County Code of Ordinances.

199.    By reason of this conduct, Miami-Dade County has been damaged and continues to be damaged, in an amount yet to be determined.

**Count 4 – Intentionally left blank**

200.    Intentionally left blank.

201.    Intentionally left blank.

202.    Intentionally left blank.

203.    Intentionally left blank.

## Count 5 – New York FCA Claim

204.     Relator re-alleges paragraphs 1 through 185.

205.     This a claim for treble damages under the New York False Claims Act, McKinney's State Finance Law § 188.

206.     Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to state and local governments, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to state and local governments, in violation of McKinney's State Finance Law § 189(1)(H).

207.     By reason of this conduct, the state and local governments of New York have been damaged and continue to be damaged, in an amount yet to be determined.

## Count 6 – California FCA Claim

208.     Relator re-alleges paragraphs 1 through 185.

209.     This a claim for treble damages under the California False Claims Act, Cal. Gov. Code § 12650, *et seq*.

210.     Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to state and local governments, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to state and local governments, in violation of Cal. Gov. Code § 12651(a)(7).

211.     By reason of this conduct, the state and local governments of California have been damaged and continue to be damaged, in an amount yet to be determined.

## Count 7 – Illinois FCA Claim

212.    Relator re-alleges paragraphs 1 through 185.

213.    This a claim for treble damages under the Illinois False Claims Act, § 740 ILCS 175/2.

214.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to state and local governments, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to state and local governments, in violation of § 740 ILCS 175/3(a)(1)(G).

215.    By reason of this conduct, the state and local governments of Illinois have been damaged and continue to be damaged, in an amount yet to be determined.

## Count 8 – Indiana FCA Claim

216.    Relator re-alleges paragraphs 1 through 185.

217.    This a claim for treble damages under the Indiana False Claims Act, Indiana Code § 5-11-5.5-1, *et seq.*

218.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the State, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the State, in violation of Indiana Code § 5-11-5.5-2(b)(6).

219.    By reason of this conduct, the State of Indiana has been damaged and continues to be damaged, in an amount yet to be determined.

## Count 9 – Maryland FCA Claim

220.    Relator re-alleges paragraphs 1 through 185.

221.    This a claim for treble damages under the Maryland False Claims Act, Maryland Code § 8-101, *et seq.*

222.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the City of Baltimore, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the City of Baltimore, in violation of Maryland Code § 8-102(b)(7) and (b)(8).

223.    By reason of this conduct, the City of Baltimore has been damaged and continues to be damaged, in an amount yet to be determined.

## Count 10 – Massachusetts FCA Claim

224.    Relator re-alleges paragraphs 1 through 185.

225.    This is a claim for treble damages under the Massachusetts False Claims Act, M.G.L.A. 12 § 5A, *et seq.*

226.    Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to state and local governments, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to state and local governments, in violation of M.G.L.A. 12 § 5B(a)(9).

227.    By reason of this conduct, the state and local governments of Massachusetts have been damaged and continue to be damaged, in an amount yet to be determined.

## Count 11 – New Jersey FCA Claim

228.   Relator re-alleges paragraphs 1 through 185.

229.   This a claim for treble damages under the New Jersey False Claims Act, N.J.S.A. §
2A:32C-, *et seq.*

230.   Through the acts described above, the Defendant knowingly made, used, or caused
to be made or used, false records or statements material to an obligation to pay or transmit money
or property to the State, and Defendant knowingly concealed, improperly avoided and decreased
its obligations to pay or transmit money or property to the State, in violation of N.J.S.A. §
2A:32C-3(g).

231.   By reason of this conduct, the State of New Jersey has been damaged and continues
to be damaged, in an amount yet to be determined.

## Count 12 – New Mexico FCA Claim

232.   Relator re-alleges paragraphs 1 through 185.

233.   This is a claim for treble damages under the New Mexico False Claims Act,
N.M.S.A. § 44-9-2(A), *et seq.*

234.   Through the acts described above, the Defendant knowingly made, used, or caused
to be made or used, false records or statements material to an obligation to pay or transmit money
or property to state and local governments, and Defendant knowingly concealed, improperly
avoided and decreased its obligations to pay or transmit money or property to state and local
governments, in violation of N.M.S.A. § 44-9-3(A)(8).

235.   By reason of this conduct, the state and local governments of New Mexico have
been damaged and continue to be damaged, in an amount yet to be determined.

## Count 13 – North Carolina FCA Claim

236.     Relator re-alleges paragraphs 1 through 185.

237.     This a claim for treble damages under the North Carolina False Claims Act, N.C.G.S.A. § 1-605, *et seq*.

238.     Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the State, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to the State, in violation of N.C.G.S.A. § 1-607(a)(7).

239.     By reason of this conduct, the State of North Carolina has been damaged and continues to be damaged, in an amount yet to be determined.

## Count 14 – Tennessee FCA Claim

240.     Relator re-alleges paragraphs 1 through 185.

241.     This is a claim for treble damages under the Tennessee False Claims Act, Tennessee Code § 4-18-102, *et seq*.

242.     Through the acts described above, the Defendant knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to state and local governments, and Defendant knowingly concealed, improperly avoided and decreased its obligations to pay or transmit money or property to state and local governments, in violation of Tennessee Code § 4-18-103(a)(7).

243.     By reason of this conduct, the state and local governments of Tennessee have been damaged and continue to be damaged, in an amount yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, the Relator requests that judgment be entered against Defendant, ordering that:

a.    Lexis cease and desist from violating the federal False Claims Act and the False Claims Acts of Florida, Miami-Dade County, New York, California, Illinois, Indiana, Maryland, Massachusetts, New Jersey, New Mexico, North Carolina, and Tennessee.

b.    Lexis pay an amount equal to three times the amount of damages sustained by the governmental entities described in this Complaint.

c.    Lexis pay civil penalties in the amounts allowed by law.

a.    Relator be awarded a reasonable Relator share as allowed by law.

d.    Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs.

e.    Relator and the governmental entities at issue in this case be granted all such other relief as the Court deems just and proper.

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

## DEMAND FOR JURY TRIAL

Relator respectfully demands trial by jury of all issues so triable.

Respectfully submitted, this 17th  day of January 2018.

Ryon McCabe
Florida Bar No. 9075
rmccabe@mccaberabin.com
e-filing@mccaberabin.com
MCCABE RABIN, P.A.
1601 Forum Place, Ste. 505
West Palm Beach, Florida 33401
Tel.: 561-659-7878

Lance A. Harke
Florida Bar No. 863599
lharke@harkeclasby.com
Sarah Engel
Florida Bar No. 991030
sengel@harkeclasby.com
HARKE CLASBY LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone:    (305) 536-8220

Philip Freidin
Florida Bar No. 118519
pf@fblawyers.net
FREIDIN BROWN, P.A.
One Biscayne Tower
 2 South Biscayne Boulevard, Suite 3100
Miami, FL 33131
Tel (305) 371-3666

Richard Celler
Florida Bar No. 173370
richard@floridaovertimelawyer.com
RICHARD CELLER LEGAL, P.S.
7450 Griffin Rd #230
Davie, FL 333142
Tel: 954-903-7475